LUCRETIA HARRINGTON v. COMMISSIONERS OF WADESBORO.

(Filed 17 November, 1910.)

1. Cities and Towns — Electricity — Dangerous Instrumentalities — Profit—Negligence—Liability.

Municipal corporations engaged in the business of supplying electricity at a profit are not therein exercising a governmental power conferred for the public benefit, and are liable, as other corporations are, for damages proximately caused to an individual through the negligence of its agent and employees in the conduct of such business.

2. Electricity—Dangerous Instrumentalities—Negligence—Degree of Care.

Persons, corporate or individual, engaged in operating an electric plant and supplying power from them, are held to a very high degree of care; and when an untrained and inexperienced boy takes hold of live wires improperly placed or negligently exposed, such act of the boy does not of itself ordinarily afford evidence of contributory negligence.

3. Same — Live Wires — Improper Placing—Insulation—Children— Contributory Negligence—Evidence.

The defendant town was engaged in furnishing for profit the electrical power to run a moving picture show, operated in a tent,

the wires conducting the electricity passing to the tent over a path where persons were accustomed to move, and these wires were permitted to sag in easy reach of such persons. Plaintiff's intestate, an inexperienced boy of seventeen years, and who worked on a farm, living there with his mother, in passing along this path stooped under and caught hold of one of the wires, which was, at that place, permitted to remain uninsulated for the distance of about a foot, and received a shock that killed him. *Held*, (1) The defendant was negligent in permitting the wires to remain as placed and under the existing conditions, is liable for the consequent damages; (2) the act of the boy in thus catching the wire was not in itself such contributory negligence as to bar plaintiff's recovery.

4. Negligence—Killing—Action, When Brought—Evidence — Appeal and Error—Record—Presumptions.

Actions of this character for damages for negligent killing must be brought within a year under our statute, not as one of limitations, but a constituent feature of the right of action; the courts, however, will take judicial notice of relevant facts and entries of record in the suit being tried, and when therein it appears that the killing occurred in July, the summons was issued in the following January, it is proper for the appellate court to assume, in support of the verdict and judgment rendered, that a fact of this character was brought to the attention of the jury in some permissible way.

5. Evidence—Dying Declarations—Res Gestae.

In an action for damages for the negligent killing of plaintiff's intestate caused by his catching hold of defendant's live wire improperly placed and exposed, an exclamation of the intestate as he caught the wire, fell and expired, bearing upon the question of defendant's negligence, is a part of the *res gestæ;* and the doctrine as to the admissibility of dying declarations, only in cases of homicide, is inapplicable.

6. Electricity — Negligence—Subsequent Repair—Evidence—Harmless Error—Facts Proven.

The questions in this case turning upon whether the negligent placing and improper insulation of defendant's live wire caused the death of plaintiff's intestate, the admission of a question and answer under defendant's objection, tending to show that the wire causing the death had afterwards been properly wrapped and insulated, without connecting defendant with it, is harmless; and, also, not reversible error in this case under the evidence on this question which clearly establishes the defendant's negligence therein.

HARRINGTON v. WADESBORO.

**7. Electricity—Negligence—Thunder Storm—Care Required.**

In an action for damages for the negligent killing of plaintiff's intestate through defendant's negligence in the placing of its defective live wire with improper insulation, by means of which electricity was furnished by the defendant as a motive power, it was not error for the trial court to exclude evidence of a "hard" thunder storm occurring about the time of the killing, it not appearing from the evidence that the storm was likely to have charged these wires; and the defendant in such cases being charged with the duty of observing reasonable care in protecting the citizens from atmospheric as well as artificial electricity.

**8. Argument—Facts and Law—Attorneys—Application of Law.**

Under our statute attorneys are allowed to argue the whole case to the jury, both as to the law and facts, and they are permitted to state the facts of the decisions relied on to the extent of applying the law of such case to the one being tried.

APPEAL from *C. C. Lyon, J.,* at the April Term, 1910, of ANSON.

Civil action to recover damages for alleged negligent killing of the intestate. Verdict and judgment for plaintiff, and defendant excepted and appealed.

The facts are sufficiently stated in the opinion of the court.

*Robinson & Caudle* for plaintiff.
*F. J. Coxe, J. A. Lockhart, McLendon & Thomas, W. E. Brock* and *J. T. Bennett* for defendant.

HOKE, J. On careful consideration of the record and the exceptions noted, we find no reversible error to defendant's prejudice. The evidence showed "that on 4 July, 1908, the Bratton Amusement Company was conducting a moving picture show under a tent erected on an open and vacant lot in the town, being an exposed and public place, and the defendant, under a contract with the company, had installed the wires, and was supplying the electricity for carrying on the enterprise. That the wire conducting the electricity to the tent passed over a path in which numbers of persons were accustomed to move, and had been negligently placed or allowed to sag so that persons going along the path could easily reach it, some of the witnesses saying it was so low that one would have to bend his body to pass

under it, and just at this point the wire was uninsulated for a space of a foot or more. That the intestate, an inexperienced boy of 17 years of age, living with his mother and doing work on the farm in passing along the path caught hold of the wire and received a shock that killed him. One witness who saw it, speaking to the occurrence, said: "We saw him raise up the wire as if to go under; the wire was down about where it would strike his forehead if he hadn't raised it up, and he put up his hands and raised up the wire, and he fell down against the engine, got up on his knees and fell down again. The fellow that was with him asked him if the wire did that to him, and he never spoke a word; he just lay still there on the ground.

"Q. Were the wires naked where he put his hands on it? A. Yes, sir.

"Q. About how much of it was bare? A. About a foot.

"Q. Where was the wire, with reference to the path? A. The wire was right over the path."

The town having engaged in a business enterprise, supplying electricity for a profit, cannot avail itself of the position that it was at the time, in the exercise of governmental power conferred for the public benefit. Speaking to this question, in *Fisher v. New Bern,* 140 N. C., p. 510, *Connor, Judge,* delivering the opinion, said: "Where they (cities and towns) have both governmental and business corporate powers conferred, their liability to suit for the torts of their servants or agents, depends upon the sphere of activity in which the wrong complained of is committed. In so far as municipal corporations are engaged in the discharge of the powers and duties imposed upon them by the Legislature as public agencies of the State, they are not liable for breach of duty on the part of their officers. In that respect the officers are agents of the State, although selected by the municipality. When acting in their ministerial or corporate character in the management of property used for their own benefit and profit discharging powers and duties voluntarily assumed for their own advantage, they are liable to an action to persons injured by the negligence of their servants, agents and officers." And it is well established that persons, corporate or individual, engaged in operating one

of these electric plants and supplying power from them are held to a very high degree of care, and it is held further, that when an untrained and inexperienced boy takes hold of one these live wires improperly placed or negligently exposed, such act of itself does not ordinarily afford evidence of contributory negligence. *Haynes v. Gas Company,* 114 N. C., p. 204.

It was chiefly urged for error that the record did not disclose that the summons had been introduced in evidence, and the Court having held in *Gulledge v. R. R.,* 148 N. C., p. 567, and numerous other cases that the requirement of the statute that actions of this character should be brought within one year after the death, was not a statute of limitations, but a constituent feature of the right of action, there was a substantial failure of proof and the defendant's motion for nonsuit should have been allowed. But we cannot so hold. It was clearly established, it was not controverted, that the intestate was killed on 4 July, 1908. The summons in the action was issued in the January following, and the authorities are to the effect that courts will take judicial notice of facts and entries of record in the suit being presently tried, and in support of the validity of the verdict and judgment it is proper for the appellate court to assume that a fact of this character was brought to the attention of the jury in some permissible way. *Van Hook v. Whitlock,* 7 Paige, p. 373; *Searles v. Knapp,* 550 Dak., p. 325; *Farrar v. Bates & Co.,* 55 Texas, p. 193; *Secrest v. Petty,* 109 Ill., p. 188; *S. v. Bonner,* 16 Kans., p. 475; *Zell v. Lane,* 41 Ark., p. 53.

It was further contended that his Honor below should not have admitted over defendant's objection an exclamation of the intestate as he caught hold of the wire, fell and expired, and this on the ground that dying declarations are only permissible in cases of homicide. The position is sound in the abstract. Mc-Kelvey on Evidence, 2nd Ed., p. 326. But it obtains when the declaration in question is competent only as a dying declaration and strictly offered as such. In the present case and so far as it was relevant to the issue, the exclamation was admissible as part of the *res gestae, Bedsole v. R. R.,* 151 N. C., p. 153; *S. v. Spivey,* 151 N. C., p. 676, and the principle which excludes dying declarations except in cases of homicide does not apply.

"In such case declarations whether by a dying person or not, which constitute part of the *res gestae* or come within the exception of declarations against interest or the like are admissible as in other cases." 2 Taylor on Evidence, sec. 716.

It was further objected that the court allowed a question tending to show that the wire had been wrapped and properly insulated after the killing; a line of inquiry, as a general rule, held incompetent with us, as in *Myers v. Lumber Company,* 129 N. C., p. 252, and other cases. We do not discover that there is any fact in evidence bringing this act home to defendant, and so the question even if erroneous turned out to be harmless; but if it were otherwise the negligence imputable to the defendant is primarily in allowing its wire to sag down across the path where people were accustomed to move, and is so clearly estab-. lished that the answer if relevant could hardly be held for reversible error.

Again it was argued that the evidence offered by defendant as to a hard thunder storm about the time of the killing was not given consideration. It does not appear that the storm was likely to have charged these wires. There was no evidence indicative that a shock was anywhere received, nor do we find that the attention of the court was called to this testimony by any prayer for instruction, and if it had been, the better rulings are to the effect that in a case of this character or on similar facts,· an injured person is entitled to insist on reasonable care and protection from atmospheric as well as artificial electricity. *Garforth v. Tel. & Tel. Company,* 77 Vt., 441. Approved in Joyce on Electricity, sec. 445 F.

It was contended further that counsel for plaintiff in arguing his case to the jury was allowed to read to them the facts in the case of *Fisher v. New Bern,* 140 N. C., 506. It is true as said in *Horah v. Knox,* 87 N. C., 483, that counsel are not permitted to read the facts of another case to the jury as evidence of their existence and as pertinent to the case being tried, but under our statute allowing attorneys to argue the whole case to the jury both of law and fact, they are permitted to state the facts of another case for the purpose of properly applying the law of such case to the one in hand. There is nothing in

the record to show that this privilege was exceeded in the present instance and this objection also is overruled.

We are of opinion as stated that no reversible error appears in the record and the judgment therefore must be affirmed.

No error.