TOWN OF GRIMESLAND, N. C., A MUNICIPAL CORPORATION, v. CITY OF WASHINGTON, N. C., A MUNICIPAL CORPORATION.

(Filed 19 September, 1951.)

**1. Municipal Corporations § 8b (2)—**

The power of a municipality to own and operate transmission lines for the sale of current to consumers beyond its corporate limits confers no exclusive franchise upon it and it is not entitled to enjoin lawful compe-

tition within the territory outside its limits served by it, there being no contention that the competing line caused physical interference with its lines or created any hazard thereto.

**2. Municipal Corporations § 5—**

The General Assembly has authority to create municipal corporations, N. C. Constitution, Art. VIII, sec. 4, and municipalities created by it have only such powers as are expressly conferred by statute and those necessarily implied therefrom, which powers the General Assembly may enlarge, diminish or altogether withdraw at its will.

**3. Same: Municipal Corporations § 8a—**

The General Assembly may confer not only governmental powers upon a municipality but may also grant it corporate powers for a public purpose and for the public benefit; but in the exercise of such corporate powers a municipality is liable in contract and in tort as in case of private corporations and may be made subject to regulations and supervisions imposed by the general law upon other corporations so engaged, but the legislative will to make the municipality subject to such regulations must be expressed and will not be inferred.

**4. Statutes § 12—**

A local statute is not repealed or affected by the subsequent enactment of a general statute which makes no reference to the local act.

**5. Municipal Corporations §§ 5, 8a—**

The General Assembly has authority under the Constitution to authorize a municipality to build and operate lines for the transmission of electric current beyond its corporate boundaries within reasonable limits.

**6. Same: Utilities Commission § 2: Electricity § 1—**

A municipal corporation authorized by general and local statute to maintain transmission lines for the sale of current outside its corporate limits and within reasonable limitations, G.S. 160-255; Ch. 31, Public-Local Laws of 1931, is not amenable to G.S. 62-101 and is not required first to obtain a certificate of public convenience and necessity from the Utilities Commission. G.S. 62-30 (3), G.S. 62-65.

**7. Injunctions § 9—**

Where a temporary restraining order is issued in an action and the cause comes on to be heard in the Superior Court upon the merits without any further order to continue or dissolve the temporary restraining order, the presiding judge has full power and authority to determine the cause and properly refuses to remand the question of continuing the restraining order to the judge before whom it had been pending.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Burgwyn, Special Judge,* June Special Term, 1951, of BEAUFORT. Affirmed.

Plaintiff alleged that in 1924 plaintiff contracted with defendant City of Washington for a supply of electric current to be utilized by plaintiff in distribution to its citizens and others, and thereupon acquired rights

of way, and erected poles, and strung transmission wires connecting with the power plant of the defendant in Washington and running thence through the village of Chocowinity to Grimesland. This contract was renewed in 1934 and with some modification in 1938, plaintiff continuing to distribute electric current to consumers along its rights of way. The contract of 1938 provided it should continue until December 31, 1948, and thereafter until terminated by 60 days notice by either party.

It was further alleged that the defendant, for reasons not material to this appeal, notified plaintiff of termination of the contract 60 days from January 27, 1949, and that the defendant thereafter began building from north bank of Pamlico River to Chocowinity "and to points beyond and within the radius served by the plaintiff through its transmission lines" other transmission lines parellel with those of plaintiff for the purpose of serving the territory now served by plaintiff, and depriving it of patronage and entering into oppressive competition; and has wrongfully entered on plaintiff's rights of way and crossed its lines in several places. Plaintiff prayed that defendant be restrained.

Plaintiff also alleged a second cause of action for damages for breach of contract, but submitted to a voluntary nonsuit as to that cause of action and the matters therein set up are not now involved in this appeal.

The defendant admitted the execution of the several contracts referred to, and the termination of the last one in accordance with its provisions, and asserted that after the termination of contractual relations with plaintiff, the defendant had constructed transmission lines within the County of Beaufort for the sale of electric current to consumers along its lines, but has not interfered with plaintiff's business, trespassed on its property, or interfered with plaintiff's proper use thereof.

This action was instituted 23 February, 1949, and on the same day, based on plaintiff's complaint, a temporary restraining order was issued, restraining defendant "from selling and distributing electric current within the radius of the territory now served by the plaintiff and from trespassing in and upon the plaintiff's rights of way." No further order to continue or dissolve the restraining order was entered, but the cause came on in due course for trial in the Superior Court at June Special Term 1951. When reached for trial, the following stipulations were agreed to:

"This cause coming on to be heard before his Honor, W. H. S. Burgwyn, Special Judge, at the June 1951 Special Term of Beaufort County Superior Court, it was suggested by counsel that it would expedite the trial if the court would hear the pleadings and determine as a matter of law, if the defendant was required to obtain a certificate of convenience and necessity from the Utilities Commission of North Carolina for constructing the power line complained about in the complaint, and the court

agreed to hear arguments upon said question, and upon hearing argument thereon the court ruled that defendant was not required, before building its line, to obtain such a certificate, and that Section 101, Chapter 62, General Statutes, did not apply to municipal corporations. To which ruling plaintiff excepted.

"Thereupon, the parties waived a jury trial as to the other matters in this controversy, plaintiff reserving its four exceptions aforesaid, and the plaintiff having submitted to a voluntary nonsuit upon its second cause of action, as set forth in the complaint, and agreed that the court should find the facts as follows:

"1. That plaintiff is an incorporated town with a population of 350. 2. That the defendant is a municipal corporation with a population of 9500. 3. That Chocowinity is an unincorporated village with a population of approximately 300. 4. That plaintiff is six miles from Chocowinity and nine miles from Washington. 5. That plaintiff town is two and one-half miles from the Pitt County-Beaufort County line.

"6. That in 1924, plaintiff Town of Grimesland built and constructed at its own expense and is now the sole and absolute owner of a line for the transmission of electric power extending from the north bank of the Pamlico River, in the City of Washington, through the village of Chocowinity into the Town of Grimesland, and is the sole and absolute owner of an easement or right of way over which the said transmission line is constructed and has an investment therein of approximately $_____ and an investment of approximately $60,000.00 in its entire electric system.

"7. That said transmission line has been used by plaintiff for the purpose of transmitting electric current which it purchased from the City of Washington between 1924 and January 17, 1949, to the plaintiff town and to its citizens and to persons living along its right of way aforesaid and adjacent thereto, including persons residing in the village of Chocowinity as provided by the contracts of 1924, 1934 and 1938, which contracts are made a part of these stipulations.

"8. That on January 17, 1949, plaintiff ceased to buy current from the City of Washington, negotiations for the renewal of the contract having failed, and on said date entered into a contract with the City of Greenville for the purchase of electric current for distribution and sale within its corporate limits and to the customers to whom it had heretofore sold current purchased from the City of Washington, and is now serving said customers as has been its custom since 1924.

"9. That the City of Washington began construction of the line to Chocowinity in 1948 to serve Aurora, and prior thereto had never owned any easement or right of way for the transmission of electric current between its corporate limits on the north bank of Pamlico River and the village of Chocowinity, but with the consent of plaintiff town and in consideration of defendant's agreement to keep and maintain plaintiff's

right of way, and keep plaintiff's transmission lines in repair between the south bank of Pamlico River and Chocowinity, it did attach to plaintiff's poles on its aforesaid right of way, wires over which it transmitted electric current to the Town of Aurora; connecting with Aurora's line at Chocowinity.

"10. That when defendant City of Washington became aware that the plaintiff had entered into a contract with the City of Greenville to furnish it with electric current for transmission over its aforesaid right of way for distribution to plaintiff's customers, without first securing from the Utilities Commission of North Carolina, a certificate of convenience and necessity, it commenced to build and did build an electric line, paralleling plaintiff's transmission line, and within a short distance thereof, for the purpose of transmitting electric current to the Town of Aurora, and to such of plaintiff's customers as it might secure along the line which it constructed, thereby intending to enter into competition with the plaintiff for the distribution and sale of electricity between its corporate limits and Chocowinity and in the village of Chocowinity and declared its intention of paralleling plaintiff's line from Chocowinity to the Pitt County-Beaufort County line, and to enter into competition with the plaintiff for the patronage of persons and businesses in the area and serve such as might desire to purchase electric current from it. Grimesland has never applied for or obtained a certificate of public convenience and necessity from the North Carolina Utilities Commission and its line was constructed in 1924 prior to the Act of 1931 (now G.S. 62-101). The defendant relies upon Chapter 31, Public Local Laws of 1931 and the applicable provision of the General Statutes.

"11. That in constructing its transmission line between its corporate limits and Chocowinity, the defendant, without first obtaining the consent of the plaintiff, caused its said transmission line to cross plaintiff's right of way and over or under plaintiff's transmission line in three places, and cross plaintiff's service lines in eleven additional places, and has placed and put on plaintiff's right of way one pole.

"If, upon the foregoing facts, the court shall be of the opinion that plaintiff is entitled to the relief prayed for in its complaint, then it shall enter judgment accordingly. If, upon the foregoing facts, the court shall be of the opinion that the plaintiff is not entitled to the relief prayed for, then, it shall deny the same and enter judgment for the defendant, and both the plaintiff and the defendant reserve the right to appeal from any judgment so entered to the Supreme Court."

Upon consideration of the pleadings and the stipulations the court was of opinion that plaintiff was not entitled to injunctive relief, and, plaintiff having submitted to nonsuit on its second cause of action, the court rendered judgment dismissing the action. Plaintiff excepted and appealed.

*J. D. Grimes, S. O. Worthington, and Albion Dunn for plaintiff, appellant.*

*L. E. Mercer, Rodman & Rodman, and Brooks, McLendon, Brim & Holderness for defendant, appellee.*

DEVIN, C. J. The right of the Town of Grimesland to construct and maintain an electric system for the distribution and sale of electric current to consumers beyond its corporate limits, and to own and operate transmission lines for that purpose along the highway or over and upon rights of way acquired, is not questioned in this action. G.S. 160-255. But this legislative authority would not be regarded as conferring the right to exclude competition in the territory served. Having the right to engage in this business gives no exclusive franchise, and if from lawful competition its business be curtailed, it would seem that no actionable wrong would result, nor would it be entitled to injunctive relief therefrom. *Alabama Power Co. v. Ickes,* 302 U.S. 464; *Tennessee Elec. Power Co. v. Tennessee Valley Authority,* 306 U.S. 118. There are no allegations or facts shown which would justify the finding that the defendant City of Washington, in the construction and operation of its electric transmission lines, from Washington to Chocowinity and beyond has caused physical interference with plaintiff's lines, or created any hazard thereto or that its operations constitute a continuing trespass. Negligence in the construction of defendant's lines is not alleged. The gravamen of the complaint is unlawful competition, but competition alone would not justify the court in decreeing injunction.

But the plaintiff challenges the right of the defendant to maintain and operate an electric power system for the distribution and sale of electric current to consumers beyond its corporate limits without a certificate of public convenience and necessity from the Utilities Commission. The statute authorizes a municipal corporation engaged in the production and distribution of electric power to extend this service to consumers outside its corporate limits, (Public Laws 1929, Ch. 285, now codified as part of G.S. 160-255). This would confer authority on the defendant to construct and operate transmission lines for the distribution of electric current for the benefit of the public beyond its corporate boundaries within reasonable limitation. *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90. Also by a local statute (Public Local Laws 1931, Ch. 31) amendatory of the Charter of the City of Washington and creating Washington Electric Service District, power and authority was expressly conferred upon the defendant to build, maintain and operate lines for the transmission of electric current beyond its corporate limits and within Beaufort County for the public benefit.

Having then the power to extend its electric lines and to serve the public in the territory now complained of, was this power by general law

limited and circumscribed by requirement that a certificate of convenience and necessity be obtained from the Utilities Commission?

Municipal corporations are instrumentalities of the State for the administration of local government. They are created by the General Assembly under the general authority conferred by Art. VIII, sec. 4, of the State Constitution. They have such powers as are expressly conferred by statute and those necessarily implied therefrom. *Nash v. Tarboro,* 227 N.C. 283, 42 S.E. 2d 209. A municipal corporation may be empowered not only to perform governmental functions but also authorized to undertake operations in its corporate capacity when for a public purpose and for the public benefit. *Holmes v. Fayetteville,* 197 N.C. 740, 150 S.E. 624; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90. The powers conferred upon municipal corporations by statute may be enlarged, diminished, or altogether withdrawn at the will of the Legislature. *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371; *Murphy v. Webb,* 156 N.C. 402, 72 S.E. 460. But when a municipal corporation undertakes functions beyond its governmental and police powers and engages in business in order to render a public service for the benefit of the community for a profit, it becomes subject to liability for contract and in tort as in case of private corporations, *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 399, and by legislative act may be made amenable to regulations and supervisions imposed upon other corporations so engaged. Unquestionably the General Assembly would have power to prescribe that municipal corporations exercising corporate functions for public service for profit should be amenable to the laws regulating private corporations similarly engaged. *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 399. Whether it has done so in this case is the question which this appeal presents.

The plaintiff's position is that if it be conceded that the defendant City of Washington in the operation of an electric power plant for the benefit of its citizens was given authority to extend its lines and furnish electric service to consumers beyond its corporate limits, nevertheless when the defendant in doing so undertook to construct and operate a public service system in direct competition, by parallel lines, with the public service system of the plaintiff already established and serving the same territory, it became amenable to the regulatory requirement of the general statute (G.S. 62-101) that it must first obtain a certificate of public convenience and necessity from the Utilities Commission. Plaintiff maintains that considering the purpose of the statutes requiring supervision by the Utilities Commission together with the evils which would result from competition in the same locality between two public service systems, it was in the legislative mind that the same rule should be applied to municipal corporations as that applied to private corporations rendering public service.

The statute relied on by plaintiff as authority for the position that defendant before constructing its transmission lines outside its limits was required to obtain such a certificate reads as follows: "No person, or corporation, their lessees, trustees or receivers shall hereafter begin the construction or operation of any public utility plant or system or acquire ownership or control of, either directly or indirectly, without first obtaining from the Utilities Commission a certificate that public convenience and necessity requires, or will require, such construction, acquisition, or operation: Provided, that this section shall not apply to new construction in progress on May 27, 1931, nor to construction into territory contiguous to that already occupied and not receiving similar service from another utility, nor to construction in the ordinary conduct of business." The statute designates those upon whom the requirement is imposed as "person or corporation, their lessees, trustees or receivers." These descriptive words are not those ordinarily applicable to, or to be thought of as embracing cities and towns. And the business coming within the regulatory provisions of the statute is designated as "the construction or operation of any public utility plant or system." If the Legislature intended this statute to include municipal corporations, no distinction was made between operations within or without their corporate limits. It would not seem to be a reasonable construction of this statute to adopt the view that the Legislature intended to prescribe that no city or town could operate an electric light plant for the service of its citizens without obtaining this certificate from the Utilities Commission. Examining the language of the statute, the implication of a private corporation is unmistakable. Limitation upon the granted power of a municipal corporation to construct and operate for the public benefit an electric distribution system, by requiring such a certificate as a condition precedent, will not be inferred in the absence of definite expression of legislative will.

The effect of the local statute (Public Local Laws 1931, Ch. 31), which purported to empower the City of Washington to extend its electric service beyond its corporate limits "with all the privileges and immunities existing in favor of municipalities operating within the boundaries mentioned," was debated in the argument, but from an examination of this statute, we observe that it makes no reference to supervision by the Utilities Commission, nor does it specifically exempt the City from the requirement of obtaining such a certificate. This statute was ratified 12 February, 1931, and the general statute now codified as G.S. 62-101 was ratified 27 May, 1931. But the former being a local statute relating only to the City of Washington would not be repealed or affected by the subsequent enactment of the general statute which makes no reference to it. *Rogers v. Davis,* 212 N.C. 35, 192 S.E. 872; G.S. 164-7. Plaintiff's objections to this statute on constitutional ground are met by the well

considered opinion of *Justice Adams,* speaking for the Court in *Holmes v. Fayetteville,* 197 N.C. 740, 150 S.E. 624. In any event the defendant was clothed with authority in the premises by the general statute without the aid of the local act of 1931. *Kennerly v. Dallas,* 215 N.C. 532, 2 S.E. 2d 538; *Holmes v. Fayetteville, supra.*

The question here presented whether a municipal corporation in the operation of a municipally owned electric power plant with transmission lines extended to supply consumers beyond its corporate limits is required under G.S. 62-101 to obtain from the Utilities Commission a certificate of public convenience and necessity before it can lawfully operate, does not seem to have been heretofore directly decided by this Court.

In *Light Co. v. Electric Membership Corp.,* 211 N.C. 717, 192 S.E. 105, it was held that a county electric membership corporation, created under G.S. 117-6 *et seq.* was not required to obtain a certificate of public convenience and necessity before beginning operations, for the reason that the statute authorizing the formation of such membership corporation provided that the provisions of other laws should not apply to a corporation formed under this act. G.S. 117-27. Apparently it was thought the provisions of G.S. 62-101 would not be extended by implication.

In *McGuinn v. High Point,* 217 N.C. 449, 8 S.E. 2d 462, it was held that the City of High Point, in undertaking to construct a power plant and issue bonds therefor, had elected to proceed under the Revenue Bond Act of 1938 and was bound by the specific requirement imposed by that act upon those proceeding thereunder to obtain a certificate of convenience and necessity. It may be noted that this act excepted from the requirement an undertaking authorized by any local act heretofore enacted.

In *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90, it was the holding of this Court that the City's undertaking to construct an electric power plant capable of generating 104 million kilowatt hours of electric power to cost $5,500,000, and to transmit current across three counties for the purpose of engaging in the power business generally was beyond the powers of the City conferred by the Revenue Bond Act of 1935.

It may be noted that the statute defining the powers and duties of the Utilities Commission gives the Commission general supervision over rates and service by electric light, power, water and gas companies, other than such as are municipally owned or conducted; thus expressing legislative purpose to leave municipal corporations free from the supervision of the Commission. G.S. 62-30(3). And in G.S. 62-65 codifying the Public Utilities Act of 1933 it is declared that "The term corporation when used in this article, includes a private corporation, an association, a joint stock association or a business trust." *Expressio unius est exclusio alterius.*

Giving due consideration to all pertinent statutes as well as the decisions of this Court, we reach the conclusion that the court below has ruled correctly, and that the defendant City of Washington was not required to obtain a certificate of public convenience and necessity from the Utilities Commission before engaging in the distribution of electric current to consumers outside its corporate limits within Beaufort County, and that the judgment dismissing plaintiff's action should be affirmed.

Plaintiff's motion to remand the question of continuing the restraining order to the judge before whom it had been pending was properly denied. The cause was regularly reached in the Superior Court of Beaufort County and the judge then presiding had full power and authority to determine the cause. In view of this disposition of the appeal, motion to make Virginia Electric and Power Company a party defendant has become academic.

Judgment affirmed.

VALENTINE, J., took no part in the consideration or decision of this case.