## PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC. v. THE CITY OF SHELBY.

(Filed 30 June, 1960.)

**1. Injunctions § 13—**

Upon the hearing of an order to show cause · why a temporary restraining order should not be continued to the final hearing, the ultimate issues are not before the court, but the court is required to ascertain only if there is probable cause that plaintiff will be able to prevail on the merits and whether there is reasonable apprehension of irreparable loss to plaintiff if the temporary order is not continued to the hearing.

**2. Same—**

Upon the hearing of an order to show cause, it is the duty of the court to consider the inconvenience and damage which would result to defendant upon the continuance of the order, as well as the benefit that will accrue to plaintiff.

**3. Injunctions § 9—**

While the invasion of the franchise right of a corporation is subject to injunction, as a general rule a preliminary order will not be issued or continued unless a reasonably clear showing of irreparable injury is made out.

**4. Same: Injunctions § 13— Injunction should not be continued to the hearing when dissolution would not result in irreparable injury.**

In an action to restrain a municipality from constructing facilities to furnish gas to a customer outside its corporate limits under a contract between the city and such customer, instituted by a utility having no contract to serve such customer, on the ground that the city's service to such customer would invade its franchise rights, there can be no irreparable injury sufficient to support the continuance of a temporary order, since, if the city should establish its right upon the final hearing to serve such customer, the injury would be *damnum absque injuria,* and if the' city should not prevail upon the final hearing, the invasion of the franchise right would be remedied by the final judgment and the possible loss of profits to plaintiff would be ascertainable and recoverable.

**5. Appeal and Error § 1—**

The Supreme Court will not ordinarily review matters not ruled on or adjudicated in the lower court.

**6. Injunctions §§ 9, 13—**

Where, in an action by a public utility to enjoin a municipality from constructing facilities for furnishing gas to a customer outside its corporate limits, plaintiff fails to show irreparable injury and the court finds that the city is authorized by law to furnish such service, G.S. 160-255, the dissolution of the temporary restraining order will not be disturbed, the ultimate questions relating to the invasion of plain-

tiffs franchise rights, whether the city was precluded from furnishing such service by a consent judgment theretofore entered, and whether the furnishing of such service was *ultra vires* the city, being for determination upon the final hearing.

**7. Municipal Corporations § 4:    Utilities Commission § 2—**

The authority of a municipality to extend its public utilities to customers residing outside its corporate limits, G.S. 160-255, and to do so without a certificate of public convenience and necessity when no revenue bond issue is involved, is subject to reasonable limits, not only in regard to the territorial extent of the venture, but also in regard to the public benefit, not only as to residents of the city, but also in regard to the rate structure in the area and the possible result of discrimination in rates, the increase in rates to customers of utilities operating within the territory, and damage to the capital structure of such utilities.

APPEAL by plaintiff from *Froneberger, J.,* in Chambers 24 December 1959, CLEVELAND.

Action was instituted 10 December 1959.

The complaint as amended alleges in substance:

Plaintiff is a quasi-public domestic corporation and defendant a municipal corporation. Plaintiff is engaged in the transmission, distribution and sale of natural gas for compensation, subject to regulation by the North Carolina Utilities Commission under Chapter 62 of the General Statutes of North Carolina. In 1951 the Commission issued to plaintiff a certificate of convenience and necessity for specified areas wholly within the State including the entire county of Cleveland. The City of Shelby refused plaintiff a franchise for the area within its corporate limits. Plaintiff has constructed its main transmission pipe line across and through the southern section of Cleveland County and carries on business and sells gas at rates fixed by the Commission for various types and classes of natural gas services, including industrial and manufacturing establishments of all kinds. Its service is of high quality and adequate to meet the needs of all customers; its rates are reasonable, lawful and proper, as fixed and approved by the Commission. Plaintiff is ready, able and willing to adequately serve all in Cleveland County accessible to its facilities or any reasonable and proper extension thereof.

Plaintiff has constructed and laid an extension from its main line to the plant of Fiber Industries, Inc. (hereinafter called "Fiber"), situate near the village of Earl in Cleveland County. Earl is about six miles from Shelby. This extension is adequate to serve Fiber and all other users of natural gas in that vicinity.

In 1954 defendant, City of Shelby, applied to the Commission for a certificate of convenience and necessity to construct a transmission line from a line of Transcontinental Gas Pipe Line Corporation to the City of Shelby and to distribute and sell natural gas within and beyond its corporate limits, the proposed line and system to be constructed with the proceeds of revenue bonds to be issued by defendant pursuant to the Revenue Act of 1938 (G.S. 160-421). On 19 January 1954 the Commission granted to defendant a certificate authorizing service within the corporate limits of the City but not otherwise. Defendant appealed from the provisions of this order restricting service to the area within the corporate limits. At this time Pittsburgh Plate Glass Company was planning to construct a plant near Shelby; defendant desired to serve gas to this plant and feared it would locate elsewhere unless this was permitted. Plaintiff had entered a protest in defendant's proceeding before the Commission and thereby opposed the granting of extra-territorial rights to defendant. Plaintiff and defendant reached an agreement pursuant to which the cause was remanded to the Commission and an amended order entered, by consent of plaintiff and defendant, whereby defendant was permitted to furnish gas through its system to the Glass Company and it was provided in the amended order that "the City of Shelby agrees and consents that it will not again make a similar request for permission to serve natural gas to any other person, firm or corporation outside its corporate limits." This consent judgment was entered pursuant to a resolution of the Board of Aldermen of the City of Shelby. Defendant issued bonds, constructed its line and system and served the Glass Company.

Defendant now proposes, unless restrained, to lay and construct a pipe line, leading from its intake line at a point about four miles from the City and crossing plaintiff's right of way and main line and running thence to Fiber plant, for the purpose of furnishing and selling natural gas to Fiber. Defendant has entered, or is about to enter, into a contract for construction of this line.

Plaintiff has advised Fiber it is ready, able and willing to furnish adequate gas at the price fixed by the Commission. Defendant proposes to furnish gas to Fiber at a lower rate, which if charged would be discriminatory as to industrial users from plaintiff. Defendant's proposed rate is less than plaintiff's cost. Defendant pays no franchise or income taxes.

Defendant's proposed line will be a wholly new line, not an extension of its present system and not necessary for nor incidental to service of the City and its residents. It will put defendant in the

business of transmitting and selling gas outside the City in competition with plaintiff. Defendant has no legal right to construct, maintain and use this line; the scheme is *ultra vires* of defendant, contrary to law, an unlawful invasion of plaintiff's territory, will cause it irreparable damage, deprive it of profits and hamper it in attracting capital. Defendant proposes to construct other such lines; it has no obligation to serve any except those it chooses. This would leave others for plaintiff to serve at unreasonable rates. Plaintiff has no adequate remedy at law.

Plaintiff prays: (1) temporary injunction pending the termination of the action; (2) specific performance of the contract embraced in the consent judgment; and (3) permanent injunction.

On 10 December 1959 the court issued a temporary injunction restraining defendant "from proceeding further with the construction" and use of the pipe line, and directing defendant to appear on 18 December 1959 and show cause why the injunction should not be continued to the final hearing.

The defendant appeared and moved to dissolve the temporary injunction. Plaintiff offered as affidavits the complaint as amended and the exhibits attached. Defendant offered its verified motion and certain affidavits. Among other things, defendant's evidence tends to show: The City's project is not to be financed by the proceeds of a bond issue. The contractor will suffer damages in case of work stoppage due to injunction. Fiber has contracted to purchase gas from defendant and has no contract with plaintiff. The cost of the proposed pipe line will be approximately $45,000.00.

Findings of fact by the court are summarized as follows:

Plaintiff is not a resident or tax payer of the City of Shelby. Plaintiff is authorized to distribute and sell natural gas for compensation in an area including Cleveland County, is engaged in this business, has a natural gas pipe line through and across the southern section of the county, has constructed a line to the Fiber plant but has no contract with Fiber to furnish gas. Defendant has in use a gas line and system in which it invested $1,300,000.00, the proceeds from long term bonds which are to be retired from revenues of the system. Defendant has contracted to expend approximately $45,000 for right of way, materials and construction in establishing a pipe line to serve Fiber. If the restraining order is continued the contractor, now in the process of laying the line, will sustain substantial damages and has notified defendant it will seek to recover these damages.

The court also found the following additional facts:

"(k) That the plaintiff has failed to show that there is any danger

of irreparable or substantial injury or damage to it or that its rights will be lost or materially impaired pending the trial if the temporary restraining order is dissolved;

"(1) That the defendant has shown that the injury and damages to the defendant, the City of Shelby, and to the contractor, C. N. Flagg & Company, would be heavy if the temporary restraining order were continued to the hearing;

"(m) That the cost of the said pipe line by the City of Shelby is not being financed by and is not to be financed by bonds, either revenue or otherwise, issued or to be issued by the City of Shelby;

"(n) That the defendant, the City of Shelby, is not making any request to the North Carolina Public Utilities Commission in connection with the construction of said pipe line."

The court made the following conclusions of law and adjudications:

"(a) That under the General Statutes of North Carolina, including Section 160-255, a municipality, including the defendant, is expressly authorized to furnish gas services to any person, firm or corporation desiring the same outside the corporate limits where the service can be made available by the municipality;

"(b) That under the General Statutes of North Carolina, including Section 160-255, a municipality, including the defendant, is not required to obtain permission from the North Carolina Utilities Commission to construct a pipe line for the purpose of rendering gas service to any person, firm or corporation desiring the same outside the corporate limits where the service can be made available by the municipality, unless the cost of such pipe line and service is to be financed through bonds issued by such municipality;

"(c) That if the temporary restraining order herein were continued to the hearing, it would cause heavy injury and damage to the defendant, and confer little benefit in comparison upon the plaintiff.

"Upon the foregoing findings of facts and conclusions of law, IT IS ORDERED, ADJUDGED AND DECREED, that the Temporary Restraining Order heretofore entered in this cause on the 10th day of December 1959, and of record in this cause be, and the same hereby is, vacated and dissolved."

From the foregoing order plaintiff appealed and assigned errors.

*Fletcher and Lake for plaintiff, appellant.*
*A. A. Powell and Robinson, Jones & Hewson for defendant, appellee.*

MOORE, J. The parties in their briefs discuss the ultimate issues involved in the action. But these questions have not been adjudicated

by the court below and do not properly arise on this appeal. From a careful consideration of the record and the order appealed from it is determined that the sole question now before us is whether or not the court erred in dismissing and vacating the temporary restraining order.

". . . (i)n order to justify continuing the writ until the final hearing, ordinarily it must be made to appear (1) that there is probable cause the plaintiff will be able to establish the asserted right, and (2) that there is reasonable apprehension of irreparable loss unless the temporary order of injunction remains in force or that in the opinion of the court such injunctive relief appears to be reasonably necessary to protect the plaintiff's rights until the controversy can be determined." *Edmonds v. Hall,* 236 N.C. 153, 156, 72 S.E. 2d 221.

When these rules are applied to the situation here presented, we find no error in the dismissal of the temporary order of injunction. We do not think that plaintiff has alleged facts that tend to show, or has otherwise shown, that there is reasonable apprehension of irreparable loss pending the determinination of the action or that a temporary restraining order is reasonably necessary to protect plaintiff's rights during litigation. Besides, it ordinarily lies in the sound discretion of the court to determine whether or not a temporary injunction will be dissolved on hearing pleadings and affidavits only. It is the duty of the court to consider the inconvenience and damage to the defendant as well as the benefit that will accrue to the plaintiff in continuing the writ. *Lance v. Cogdill,* 238 N.C. 500, 78 S.E. 2d 319. The rights asserted by the plaintiff are controverted by the defendant.

"Injunction is a proper remedy in cases in which a franchise of a corporation or rights thereunder are being invaded. . . . and, even though complainant's franchise is not exclusive, equity may. . . . enjoin the illegal acts of others. . . . As a general rule a preliminary injunction should not be granted unless a reasonably clear case of necessity and threatened irreparable damage is made out." 43 C.J.S., Injunctions, s. 97, pp. 601-603.

In the main the injury, damage and impairment of rights of which plaintiff complains are such as will be completely remedied and restored by a favorable final judgment. Such damage by an unfavorable final judgment will be rendered *damnum absque injuria.* We refer to such damages as are occasioned by invasion of territorial franchise, fixing of discriminatory rates, possible increase of rates for rural users of plaintiff's services, further invasions by defendant and other municipal corporations, duty to serve less desirable customers while the more profitable users are served by defendant and other

municipal corporations, and possible loss of attractiveness for investors of capital. These are matters more naturally to be considered on the final hearing.

The only immediate damage that will result to plaintiff by dissolution of the temporary restraining order is possible loss of profits. If profits are lost pending final termination of the action, the amount thereof will be ascertainable and recoverable and therefore such damages are not irreparable. Furthermore, it appears from the record that Fiber has made no contract with plaintiff for service, and plaintiff does not allege otherwise. It does not affirmatively appear that Fiber would use plaintiff's services even if denied the right to purchase natural gas from defendant. It might decide to make use of artificial gas, electricity or other fuel or energy. So it does not clearly appear that there would be a loss of profits to plaintiff during litigation.

We cannot say that the court below abused its discretion in dissolving the temporary restraining order. The order appealed from should be affirmed.

Plaintiff bases its action for relief on two grounds: (1) that defendant entered into a contract (consent judgment) with plaintiff not to serve natural gas to users, save Pittsburgh Plate Glass Company, outside its corporate boundaries in competition with plaintiff, and defendant proposes to serve natural gas to Fiber in breach of this agreement; and (2) that the construction and use of the proposed pipe line by defendant to deliver and sell natural gas to Fiber are not authorized by law and are *ultra vires* of defendant.

The court below made no finding of fact or conclusion of law with respect to the alleged contract, did not rule upon its validity, did not undertake to construe it, and gave it no consideration. This Court will not ordinarily review matters not ruled on or adjudicated in Superior Court. *Collier v. Mills,* 245 N.C. 200, 204, 95 S.E. 2d 529; *Realty Co. v. Planning Board,* 243 N.C. 648, 655, 92 S.E. 2d 82. The alleged contract and its effect will be for determination upon the final hearing of this cause in Superior Court.

As to the legality of defendant's proposed project, the court concluded as a matter of law that under G.S. 160-255 defendant is authorized "to furnish gas services to any person, firm or corporation desiring same outside the corporate limits where the service can be made available by the municipality" and, since the project is not to be financed through a revenue bond issue, defendant is not required to obtain permission therefor from the North Carolina Utilities Commission. This is tantamount to a ruling that there is no probable cause shown that defendant's proposed undertaking is il-

legal. In as much as the order dismissing the temporary injunction must be affirmed on the ground already discussed, we refrain from expressing an opinion as to the correctness of the court's conclusion on the legality of the project. A final determination of this question of legality must await the final hearing in Superior Court when all facts and circumstances are presented.

We deem it expedient to point out that the authority granted by G.S. 160-255 is not unlimited. It authorizes a municipality "to construct and operate (utilities) . . . for the *benefit of the public* beyond its corporate boundaries *within reasonable limitation.*" (Emphasis added). *Grimesland v. Washington,* 234 N.C. 117, 122, 66 S.E. 2d 794. If the authority was not thus limited the Act would contravene fundamental law. *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90. The 1957 amendment did not affect these limitations. In considering the matter of public benefit, reference is not merely to the residents of the municipality. Consideration must be given to the users of gas from the City outside its boundaries, the possible effect on rural users of gas from plaintiff and like corporations, and the effect on the public generally. The term, "within reasonable limitations," does not refer solely to the territorial extent of the venture but embraces all facts and circumstances which affect the reasonableness of the venture.

While the source of the necessary funds for construction of defendant's project is not disclosed, it does appear without contradiction that the funds are not to be derived from a bond issue. Therefore, assuming that the funds are such as may be lawfully used for the proposed purpose and the project is otherwise in compliance with legal authority, a certificate of convenience and necessity from the Utilities Commission is not required. *Grimesland v. Washington, supra,* at page 126. However, the court is not disqualified to inquire into the source of the funds allocated for the project in so far as such inquiry might bear upon the legality of the venture.

Nothing herein shall be construed as the expression of an opinion as to the validity or effect of the alleged contract or as to the legality of defendant's proposed pipe line. These are matters for the Superior Court on the final hearing.

The order appealed from is

Affirmed.