QUALITY WATER SUPPLY, INC. v. CITY OF WILMINGTON

[97 N.C. App. 400 (1990)]

---

QUALITY WATER SUPPLY, INC., AND CAPE FEAR UTILITIES, INC. v. CITY OF WILMINGTON AND LANDFALL ASSOCIATES

No. 895SC413

(Filed 20 February 1990)

1. **Municipal Corporations § 23.3 (NCI3d)— water service supplied by city outside corporate limits—standing of private company to contest whether action within statutory limits**

Plaintiffs had a legitimate expectation toward providing water service to a subdivision since, by virtue of their contiguity to the subdivision, they were in a superior position to any other utility in the area to provide service to the development, as no other competitor would be able to provide for the development without first obtaining a certificate from the Utilities Commission; therefore, plaintiffs who had a legitimate interest in servicing the subdivision had standing to contest whether defendant municipality which was supplying private

QUALITY WATER SUPPLY, INC. v. CITY OF WILMINGTON

[97 N.C. App. 400 (1990)]

customers beyond the city's corporate limits was acting in accord with statutory mandates.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 228, 568.**

2. **Municipal Corporations § 23.3 (NCI3d)— city's extension of water service beyond corporate limits—extension within reasonable limitations**

Defendant city's extension of water service to private customers beyond its corporate limits was "within reasonable limitations" as required by N.C.G.S. § 160A-312 where the trial court considered the future benefits to the city of having a major water line, financed by a land development company, in place so that areas contiguous to the city might be annexed; the trial court also properly took into consideration the potential for connecting defendant's water system with that of a nearby town; and the trial court was not required to find factors such as the readiness, willingness, and ability of each supplier to provide for new customers.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 228, 568.**

APPEAL by plaintiffs from order entered 1 December 1988 in NEW HANOVER County Superior Court by *Judge James D. Llewellyn*. Heard in the Court of Appeals 6 November 1989.

*Shipman and Lea, by Gary K. Shipman, for plaintiff-appellants.*

*City Attorney Thomas C. Pollard and Assistant City Attorney Robert W. Oast, Jr., for defendant-appellee City of Wilmington.*

*Manning, Fulton and Skinner, by John B. McMillan, for intervenor defendant Landfall Associates.*

BECTON, Judge.

In this action for injunctive relief, plaintiffs, Quality Water Supply, Inc., and Cape Fear Utilities, Inc., seek to enjoin defendant, the City of Wilmington, from providing water service to the Landfall Subdivision, a development of some 2,200 acres located in New Hanover County. Landfall Associates, the developers, intervened as a party defendant. In March 1986, plaintiffs' motion for a preliminary injunction was denied, and a temporary restraining

order previously issued against the City was dissolved. The case came on for trial in October 1988. At the conclusion of the evidence, the trial judge entered an order dismissing plaintiffs' complaint for lack of standing to contest the City's actions. Additionally, the judge ruled that plaintiffs had failed to show by the greater weight of the evidence that the City did not act within reasonable limitations when it extended its water service. Plaintiffs appealed. We affirm on the ground that the City's actions were within reasonable limitations.

## I

Plaintiffs, Quality Water Supply, Inc. ("Quality Water"), and Cape Fear Utilities, Inc. ("Cape Fear Utilities"), are North Carolina corporations selling water to the public in New Hanover County. Gabriel William Dobo ("G. William Dobo") is the sole stockholder of Quality Water, and he and his brother, Robert Dobo, each own one-half of Cape Fear Utilities. Defendant, the City of Wilmington ("the City"), is a municipal corporation organized and chartered under the laws of North Carolina. The intervenor defendant, Landfall Associates, is the developer of the Landfall Subdivision ("Landfall"). This development lies outside the corporate limits of the City. Included in Landfall, along with residential and integrated commercial development, is a proposed hotel with 1,030 rooms; this hotel would require a fire flow of 3,500 gallons per minute to satisfy fire insurance underwriting requirements.

Plaintiffs' evidence showed that previous owners of Landfall provided G. William Dobo with a map of a proposed water distribution system for the subdivision, and plaintiffs subsequently submitted a proposal offering to provide water to the development. The proposal advocated the merits of Landfall Associates' engaging plaintiffs rather than municipalities such as the City or the Town of Wrightsville Beach. Mr. Dobo testified that plaintiffs "took in consideration" their future service to Landfall when they expanded their water systems in that area of the county. Ultimately, however, neither Quality Water nor Cape Fear Utilities obtained a contract to supply water to the development.

On 28 June 1985, Landfall Associates requested permission to connect Landfall to the City of Wilmington's water system. On 17 December of that year, the Wilmington City Council authorized extending the City's water mains to serve Landfall and authorized executing a contract with Landfall Associates to that effect. Pur-

suant to the contract, Landfall Associates was to finance the extension of the City's water main out to the subdivision by constructing a 24-inch line to run for approximately 16,000 feet. The closest point from the City's corporate limits to the closest point on Landfall is approximately 1.5 miles.

The City presently is the supplier of Landfall's water. The City's extended line parallels, "for some distance," an 8-inch water line installed by Cape Fear Utilities in 1985.

## II

Plaintiffs seek to challenge whether the City may provide water service to Landfall consistent with the requirements of N.C. Gen. Stat. Sec. 160A-312 (1987). That section provides in part that "a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate any public enterprise outside its corporate limits, within reasonable limitations . . . ." Section 160A-312 grants cities limited authority to extend utility services beyond their corporate limits. *See Duke Power Co. v. City of High Point ("Duke Power #1")*, 69 N.C. App. 335, 337, 317 S.E.2d 699, 700 (1984). Plaintiffs contend that the City's contract with Landfall does not come within the "reasonable limitations" language of the statute and is therefore ultra vires. The City disagrees and argues further that plaintiffs are without standing to contest the City's actions. As we noted above, the trial judge agreed with the City on both grounds. We will begin our review by addressing whether plaintiffs have standing to complain about the City's provision of water to Landfall.

## A

An injunction is a proper remedy when a franchise, even though not exclusive, or rights under a franchise are being invaded. *See Public Serv. Co. v. City of Shelby*, 252 N.C. 816, 821, 115 S.E.2d 12, 16 (1960). Plaintiffs argue that they are proper parties to challenge the reasonableness of the City's actions by virtue of N.C. Gen. Stat. Sec. 62-110(a) (1989). Subsection (a) provides that

> . . . no public utility shall hereafter begin the construction or operation of any public utility plant or system or acquire ownership or control thereof, either directly or indirectly, without first obtaining from the [North Carolina Utilities] Commission a certificate that public convenience and necessity requires, or will require, such construction, acquisition or operation: *Provided, that this section shall not apply to construc-*

QUALITY WATER SUPPLY, INC. v. CITY OF WILMINGTON

[97 N.C. App. 400 (1990)]

*tion into territory contiguous to that already occupied and not receiving similar service fron another public utility*, nor to construction in the ordinary conduct of business. [Emphasis added.]

Subsection (a) requires a utility—but not a city, *see Town of Grimesland v. City of Washington*, 234 N.C. 117, 125-26, 66 S.E.2d 794, 800 (1951)—to apply to and obtain from the Utilities Commission a certificate of public convenience and necessity ("certificate") before it may service a given area. A certificate, once granted, is, like a franchise, a valuable property right. *See State ex rel. Utilities Comm'n v. Gen. Tel. Co.*, 281 N.C. 318, 335, 189 S.E.2d 705, 716 (1972). If the area to be served is "contiguous" to a territory already occupied by the utility, the company need not obtain a certificate before serving the contiguous area.

Andy Russell Lee, Director of the Public Staff, Water Division, of the Utilities Commission testified that "if [a water company is] extending mains from an existing system, then [the Commission] would consider that as being contiguous to an existing system." The Commission relies upon the utilities themselves to determine initially whether a new territory is contiguous to an area they currently serve.

[1] Cape Fear Utilities presently serves the Lions Gate development, located across the street from Landfall, and Wrightsville West, located to the east of Landfall. Plaintiffs do not hold certificates for these specific areas, but serve them on the basis of their contiguity to other areas for which plaintiffs have certificates. Quality Water has a certificate to serve the Windemere Subdivision, and Cape Fear Utilities holds certificates for the Pirate's Cove Subdivision and the El Ogden Subdivision. The trial judge found that twelve subdivisions, none of which are served by plaintiffs, are located between Windemere or Pirate's Cove and Landfall. Our initial task is to determine if plaintiffs have any right they may assert against the City's efforts to service Landfall. We hold that they do.

Plaintiffs argue that Landfall, because it is "contiguous" to areas plaintiffs currently occupy, could be served by plaintiffs without their needing to secure a certificate from the Commission. Mr. Lee substantiated this claim when he testified that the Public Staff would not recommend that plaintiffs be made to apply for a new certificate to service the subdivision. The evidence at trial showed

QUALITY WATER SUPPLY, INC. v. CITY OF WILMINGTON

[97 N.C. App. 400 (1990)]

that no other utility would be in the position to serve Landfall without first having to apply to the Commission for a certificate. If any other company had made application, moreover, the Commission would have informed plaintiffs, "and if [plaintiffs] had any objections, then the matter would be scheduled for a hearing before the Commission to decide who would have the right to serve it."

Electric utilities are assigned service areas in which they have a nonexclusive right to serve all premises located within those areas. N.C. Gen. Stat. Sec. 62-110.2(b)(8) (1989); *Domestic Elec. Serv., Inc. v. City of Rocky Mount*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974). An electric company assigned such an area thus has standing to challenge the encroachment of a municipality into it. *See generally Domestic Electric; Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 309 S.E.2d 209 (1983); *Duke Power Co. v. City of High Point ("Duke Power #2")*, 69 N.C. App. 378, 317 S.E.2d 701, *disc. rev. denied*, 312 N.C. 82, 321 S.E.2d 895 (1984). No comparable statute authorizes the granting of service areas to water utilities. A water utility seeking to challenge the legality of a municipality's extension of service to private customers outside the city's limits must assert, therefore, its rights pursuant to Section 62-110(a).

In our view, plaintiffs have shown that they have a sufficient property right at stake in Landfall. The parties vigorously dispute whether Landfall is, in fact, contiguous to any area currently occupied by plaintiffs, and the trial judge held that Landfall is not. At least implicitly, both the judge and the City recognized that, in this case, contiguity is significant to a standing analysis. We hold, in contrast to what the judge found, that Landfall is a territory contiguous to areas occupied by these plaintiffs. Section 62-110(a) requires only that a company "occupy" an area not being served by another utility. A water company "occupies" through the presence of its water lines in the territory. These plaintiffs, by virtue of their contiguity to Landfall, are in a superior position to any other utility in the area to provide service to the development, since no other competitor would be able to provide for Landfall without first obtaining a certificate. In the event another company sought a certificate, plaintiffs, specifically, would be afforded the opportunity to contest the application. We think that plaintiffs have demonstrated more than a "unilateral expectation" toward providing service to Landfall. *Gentile v. Town of Kure Beach*, 91 N.C. App. 236, 241, 371 S.E.2d 302, 305-06 (1988). Rather, plain-

tiffs' claim is more in the nature of a "legitimate expectation of entitlement," *id.*, and is sufficient to give them a protectible interest in this case.

B

"Injunctive relief is premised on an injury actually threatened and practically certain, not one anticipated and merely probable." *Duke Power #1*, 69 N.C. App. at 337, 317 S.E.2d at 700. In *Duke Power #1*, this court held that an electric utility had not shown that a prospective loss of potential customers was an injury warranting injunctive relief. We cited the trial judge's finding of fact that the City of High Point, when it extended its electric lines beyond its corporate limits to supply power to a pollution control plant, a police academy, and a garbage pulverizer plant—all of which were owned and operated by the City of High Point—had no plans to serve any specific electric customers other than itself. *Id.* at 337, 317 S.E.2d at 701. We noted, however, that if High Point sought, in the future, to serve private customers outside the city, that action would be governed by the reasonable limitations standard of Section 160A-312. *Id.* at 338, 317 S.E.2d at 701. In this case, plaintiffs, who have a legitimate interest in Landfall, seek to contest whether a municipality that is supplying private customers beyond the City's corporate limits, is acting in accord with statutory mandates. We think plaintiffs are proper parties to do this, and we hold that they have standing to challenge the City's provision of water to Landfall. We vacate that portion of the judge's order dismissing the complaint on standing grounds.

III

[2]  We turn now to the question whether the City's extension of service to private customers beyond its corporate limits was "within reasonable limitations" as required by Section 160A-312. Reasonable limitations does not refer solely to the territorial extent of the City's venture but "embraces all facts and circumstances which affect the reasonableness of the venture." *Shelby*, 252 N.C. at 823, 115 S.E.2d at 17. Factors to consider in determining the reasonableness of a city's proposed extension of service include the level of current service in the territory in question; the readiness, willingness and ability of each competitor to provide service; the location of the territory in relation to the city limits; and the existence of any annexation plans by the city. *Duke Power #2*, 69 N.C. App. at 388, 317 S.E.2d at 707. There is, however, no ex-

clusive list of factors; rather, all facts and circumstances within each case must be weighed. *Id.*

N.C. Gen. Stat. Sec. 160A-45 (1987) in part says that

(1) . . . sound urban development is essential to the continued economic development of North Carolina;

(2) . . . municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and governmental purposes or in areas undergoing such development;

. . . .

(5) . . . areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality . . . .

We agree with the City that the legislative policy expressed in the statute is that municipalities remain "dynamic growing entit[ies]." N.C. Gen. Stat. Sec. 160A-47(3)b (1987) mandates that an annexing municipality must provide, among other things, for the extension of major trunk water mains into the area to be annexed.

The judge, in findings not excepted to by plaintiffs, found that Landfall lies adjacent to areas which have been studied by the City for annexation. The annexation reports note that one of the limitations on the annexing of these areas was the cost of extending trunk water mains. The City contends that it is reasonable to consider the future benefits to Wilmington of having a major water line, financed by Landfall Associates, in place so that the areas might be annexed, and we agree. *Cf. Duke Power #2*, 69 N.C. App. at 390, 317 S.E.2d at 708 ("central" to court's consideration of long-term benefits was city's plans to annex and subsequent annexation of proposed service area).

The judge also found that the City and the Town of Wrightsville Beach have discussed the extension of a water line from Wilmington to Wrightsville Beach. Interconnected public water systems are likewise consistent with legislative policy. *See* N.C. Gen. Stat. Sec. 162A-21 (1987). The presence of the City's water line at Landfall, with the potential for connecting the City's system with Wrightsville

Beach, is another factor the judge properly considered in determining the reasonableness of the City's actions.

Plaintiffs argue that the trial judge failed to find factors—such as the readiness, willingness and ability of each supplier to provide for the new customers—that must be considered when determining the reasonableness of a city's extension of service. Plaintiffs are correct that no finding addresses the factors of readiness, willingness and ability. There is evidence in the record to support a finding that neither plaintiffs nor the City were ready to meet the fire-flow needs of Landfall had Landfall's proposed hotel been in place.

Even if, arguendo, plaintiffs were more ready, willing and able to supply Landfall, the trial judge need not have found this, nor any other single factor, dispositive. Indeed, factors weighing in favor of a supplier may be obviated by other factors showing the reasonableness of the City's plan. *Duke Power #2*, 69 N.C. App. at 389-90, 317 S.E.2d at 707-08. We have cited the judge's findings related to annexation and the interlocal agreements. We further note that a city has the discretionary authority to provide water service outside its city limits, *Town of West Jefferson v. Edwards*, 74 N.C. App. 377, 385, 329 S.E.2d 407, 412-13 (1985), and that the authority of cities to execute powers conferred upon them by law is to be construed broadly. *Id.* (citing N.C. Gen. Stat. Sec. 160A-4).

We therefore hold that the facts found by the judge support his conclusion of law that the City's actions were within the reasonable limitations requirement of Section 160A-312. Consequently, we overrule this assignment of error.

## IV

That portion of the judgment dismissing plaintiffs' complaint for lack of standing is vacated. That portion upholding the reasonableness of the City's actions is

Affirmed.

Judges PHILLIPS and GREENE concur.