DOMESTIC ELECTRIC SERVICE, INC. v. THE CITY OF ROCKY MOUNT AND COKEY APARTMENTS, LTD.

No. 52

(Filed 10 April 1974)

1. **Electricity § 2; Utilities Commission § 4— electric power — area outside municipality — competition**

Chapter 287 of the Session Laws of 1965, including G.S. 62-110.2, did not, without more, alter the competitive rights of municipalities, investor-owned utilities and electric membership corporations to compete for patronage in areas outside the corporate limits of municipalities; therefore, any premises in any such area could, prior to an assignment of such area by the Utilities Commission, have been served by any of the three competitors chosen by the user (assuming no contract restricting competition and assuming an extension to serve such user would fall within the "reasonable limitation," applicable to service by the municipality).

2. **Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4— electric service — area assigned to utility — authority of municipality to provide service**

Since a city is neither a "public utility" nor an electric membership corporation and thus is not an "electric supplier" as that term is used in G.S. 62-110.2, a city is not prohibited by G.S. 62-110.2(b) (10) from providing electricity for new customers in an area outside the city limits which has been assigned by the Utilities Commission to an investor-owned utility.

3. **Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4— electric service —area assigned to utility — authority of municipality to provide service**

G.S. 62-110.2(b) (8) does not grant an assignee of an area outside a municipality the exclusive right to serve electric customers therein and thus does not prohibit a municipality from extending its service lines into an area assigned to a public utility.

4. **Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4— city's power to extend electric lines beyond boundaries**

A city's power to extend its lines and distribute electric current beyond its corporate boundaries is expressly restricted by G.S. 160A-312 to "reasonable limitations."

**5. Municipal Corporations § 4— primary function of municipality**

The primary function of a municipal corporation is to provide local government within its limits and authorized services to its inhabitants, not to engage in business enterprises for profit outside its corporate limits.

**6. Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4— extension of electric service beyond city limits — reasonable limitations**

The term "reasonable limitations" does not refer solely to the territorial extent of the venture but embraces all facts and circumstances which affect the reasonableness of the venture.

**7. Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4— electric service — city's extension beyond boundaries — exceeding reasonable limitations**

A city's extension of its electric system across its city limits to serve a new apartment complex in an area assigned to an investor-owned utility exceeds "reasonable limitations" and, therefore, is beyond the authority of the city, where the investor-owned utility had its service lines in the immediate vicinity of the apartment complex and was ready, able and willing to serve the apartments, there is nothing to indicate that its service will be inadequate, and both its service and rates are subject to regulation by the Utilities Commission while the city's service and rates are not regulated by any agency.

APPEAL by the City of Rocky Mount from the decision of the Court of Appeals, reported in 20 N.C. App. 347, 201 S.E. 2d 720, *Judge Britt* having dissented therefrom.

For many years the City of Rocky Mount has furnished electric service to its inhabitants and to users located outside the city limits, its most distant customer being fourteen miles from the city. Cokey Apartments, Ltd., hereinafter called Cokey, is a limited partnership which owns a tract of land containing 9.1 acres, lying partly within and partly outside the city limits. When this action was instituted, Cokey was in process of constructing a large number of apartment units, contained in six separate buildings, on that portion of its land lying outside the corporate limits of the city. Domestic Electric Service, Inc., hereinafter called Domestic, is a privately owned public service corporation. For many years it has furnished electric service to the public in parts of Nash, Edgecombe and Wilson Counties, including some customers located within the present city limits of Rocky Mount. Domestic operates under a certificate of public convenience and necessity issued by the Utilities Commission and is an electrical supplier, as that term is defined in G.S. 62-110.2(a)(3).

On 13 March 1970, the Utilities Commission, pursuant to G.S. 62-110.2(c), assigned to Domestic a service area in Edgecombe County, including that portion of the land of Cokey on which all of Cokey's apartments were being constructed at the time the present action was instituted.

In July 1972, Cokey informed the city that Cokey desired the city to furnish electric service to its apartments. The city agreed with Cokey, in writing, that it would do so. The United States Department of Housing and Urban Development approved the financing of the construction of the apartments with knowledge of this agreement.

Since November 1929, Domestic has supplied electric service to residences and other buildings located on a 21 acre tract of which the Cokey land was originally a part. It continues to do so. Domestic also supplies electric service to a number of other residential and commercial users located on each side of Cokey Road (N. C. Highway No. 43) on which the Cokey land abuts. Some of these are now located inside the city limits, as a consequence of an annexation of territory by the city in 1970. Domestic presently serves numerous customers within 300 feet of the land of Cokey and, since 20 April 1965, has had its distribution lines immediately adjacent to the Cokey land.

On 4 May 1973 Cokey made formal application to the city for electric service to its apartments then under construction. At that time, and on 9 May 1973, when this action was instituted, the nearest customer served by the city was within the city limits and 650 feet from the Cokey land on which these apartments were being constructed. Immediately upon receiving Cokey's application, the city began construction of an extension of its previously existing distribution line, running 675 feet to the boundary of the Cokey land, for the purpose of serving the apartments then under construction by Cokey. This extension of the city's distribution line crossed and paralleled previously existing distribution lines of Domestic. It was completed 10 May 1973, the day after this suit was instituted. Prior to the commencement of its construction, Domestic advised city officials having direction of the city's utility system that Domestic expected to serve the Cokey Apartments.

At the time of the above mentioned assignment of territory to Domestic in 1970, the city had distribution lines located within such assigned territory. Its right to continue service to its then

customers reached by those lines is not involved in this action. The city was not a party to the proceeding before the Utilities Commission in which such assignment of territory was made but was served, by publication, with notice of that proceeding and of its right to intervene therein.

On 9 May 1973, Domestic brought this action for a temporary restraining order, a preliminary injunction and a permanent injunction, restraining and enjoining the city from supplying electric service to the said apartments and restraining and enjoining Cokey from accepting such service from any supplier other than Domestic. A temporary restraining order was issued without notice to the defendants and the matter was set for hearing before James, J., who granted a preliminary injunction in accordance with the prayer of the complaint pending the determination of the matter upon its merits.

The matter came on for hearing before Lanier, J., at the 14 August 1973 Session of Nash. A jury trial was waived and the facts recounted above were stipulated. The Superior Court found the facts to be as so stipulated and concluded as follows:

"1. Extension of the City's lines a distance of 675 feet beyond its corporate limits to serve Cokey is not an unreasonable extension.

"2. Neither Domestic nor the City is prohibited from providing electricity to Cokey. Domestic's right arises under the order of the Utilities Commission dated March 13, 1970, issued pursuant to G.S. 62-110.2. The City's right arises under G.S. 160A-312, et seq.

"3. Cokey, as customer, has the right in this case to choose between Domestic or the City as its electric supplier.

"4. Because Cokey has chosen the City, the City has the right to furnish electric service to Cokey to the exclusion of Domestic."

Upon these conclusions, Lanier, J., entered judgment dissolving the preliminary injunction and denying the plaintiff's prayer for a permanent injunction. The plaintiff appealed to the Court of Appeals, assigning as error each of the above quoted conclusions and the signing of the judgment. The Court of Appeals reversed, holding that G.S. 62-110.2(b)(8) gives to Domestic the exclusive right to provide electricity for all new

customers in the territory assigned to it by the Utilities Commission.

The order of the Utilities Commission, above referred to, was entered 13 March 1970 in a proceeding before the Commission, begun by the joint application of Domestic, other privately owned suppliers of electricity and the Edgecombe-Martin Electric Membership Corporation, requesting the Commission to assign service areas in Edgecombe County pursuant to G.S. 62-110.2(c), enacted in 1965. Notice of hearing and of the right to intervene or to protest the requested assignment was duly published. No such intervention or protest was filed. Thereupon, the Utilities Commission heard the matter and made findings of fact, including findings that the applicants before it, including Domestic, were electric suppliers, as that term is defined by G.S. 62-110.2(a)(3), and that no other electric supplier, as so defined, operated in the areas of Edgecombe County to which the application related or asserted any claim for assignment to it of any portion of the area. The Commission further found as a fact that a joint agreement had been reached between the applicants before it covering the areas in the county "which are outside the corporate limits of municipalities and more than three hundred (300) feet from the lines of any electric supplier." Pursuant to such agreement between the applicants, the Commission assigned to Domestic the territory which includes the land on which the Cokey Apartments are located, this area being more than 300 feet from the lines of any electric supplier and being outside the corporate limits of any municipality.

*Spruill, Trotter & Lane by D. C. McCotter III and Robert K. Smith; and Tally & Tally by J. O. Tally, Jr., and James D. Garrison for The City of Rocky Mount.*

*Battle, Winslow, Scott & Wiley, P.A. for Domestic Electric Service, Inc.*

LAKE, Justice.

Prior to the enactment of Ch. 287 of the Session Laws of 1965, investor-owned electric power companies and electric membership corporations, unless restricted by contract, were free to compete, in areas outside the corporate limits of municipalities, for the patronage of users and potential users of electric power. *Utilities Commission v. Lumbee River Electric Membership Corp.*, 275 N.C. 250, 166 S.E. 2d 663; *Pitt & Greene Electric*

*Membership Corp. v. Light Co.,* 255 N.C. 258, 120 S.E. 2d 749; *Light Co. v. Johnston County Electric Membership Corp.,* 211 N.C. 717, 192 S.E. 105. In absence of such contract, an electric membership corporation was also free to continue to serve its members notwithstanding their having become residents of a municipality, by virtue of the annexation by the municipality of the territory in which such members were located, and notwithstanding the fact that it had no franchise from the municipality. *Pee Dee Electric Membership Corp. v. Light Co.,* 253 N.C. 610, 117 S.E. 2d 764; *Power Co. v. Blue Ridge Electric Membership Corp.,* 253 N.C. 596, 117 S.E. 2d 812. In addition, a municipality, operating its own electric distribution system for the service of its inhabitants, had the right, under Ch. 285 of the Public Laws of 1929, codified as G.S. 160-255 (now G.S. 160A-312), to extend its lines beyond its corporate limits "within reasonable limitations" and thus to compete in rural areas with investor-owned power companies and with electric membership corporations. *Grimesland v. Washington,* 234 N.C. 117, 66 S.E. 2d 794.

"In the absence of a valid grant of such right by statute, or by an administrative order issued pursuant to statutory authority, and in the absence of a valid contract with its competitor or with the person to be served, a supplier of electric power, or other public utility service, has no territorial monopoly, or other right to prevent its competitor from serving anyone who desires the competitor to do so." *Utilities Commission v. Lumbee River Electric Membership Corp., supra,* at p. 256. Such three-way competition resulted in substantial duplication of power lines and facilities, the lines of one supplier frequently paralleling or crossing those of its competitor. As we said in *Utilities Commission v. Lumbee River Electric Membership Corp., supra,* at p. 257:

"It is for the Legislature, not for this Court or the Utilities Commission, to determine whether the policy of free competition between suppliers of electric power or the policy of territorial monopoly or an intermediate policy is in the public interest. If the Legislature has enacted a statute declaring the right of a supplier of electricity to serve, notwithstanding the availability of the service of another supplier closer to the customer, neither this Court nor the Utilities Commission may forbid service by such supplier merely because it will necessitate an uneconomic

or unsightly duplication of transmission or distribution lines. In such event, it is immaterial whether the Legislature has imposed upon such supplier a correlative duty to serve."

Frequent litigation between investor-owned power companies and electric membership corporations grew out of contracts between them defining and limiting territories to be served by each. To avoid or reduce such litigation and uneconomic duplication of transmission and distribution systems, the investor-owned electric utilities and the electric membership corporations, throughout the State, collaborated in recommending to the Legislature the enactment of Ch. 287 of the Session Laws of 1965. The language of the Act was the result of their collaboration and agreement and was carefully chosen for the accomplishment of this purpose. See, *Utilities Commission v. Lumbee River Electric Membership Corp., supra,* at p. 258. The Act contained two parts. The first, relating to electric service within the corporate limits of municipalities, is codified as G.S. 160A-331 to G.S. 160A-338, including subsequent amendments not pertinent to this appeal. The second, relating to electric service outside the corporate limits of municipalities, is codified as G.S. 62-110.2.

The first part of the Act of 1965 sets forth, in great detail, the rights of a "primary supplier" and the rights of a "secondary supplier" to serve within the corporate limits of a municipality. A "primary supplier" is a city which owns and maintains its own electric system, or a person, firm or corporation furnishing electric service within a city pursuant to a franchise granted by, or a contract with, the city or continuing to do so after the expiration of a previously held franchise or contract. A "secondary supplier" is a person, firm or corporation, other than a primary supplier, who furnishes electricity at retail to one or more customers, other than itself, within the limits of a city. This part of the Act of 1965 has no direct bearing upon the question presented by the present appeal.

The second part of the Act of 1965, relating to electric service outside the corporate limits of municipalities, defines, also in great detail, the rights of, and restrictions upon, "electric suppliers" in such areas. G.S. 62-110.2 (a) (3) defines "electric supplier" to mean "any *public utility* furnishing electric service or any electric membership corporation." (Emphasis added.)

G.S. 62-110.2, specifying the rights of, and restrictions upon, an "electric supplier," is, of course, a part of Ch. 62 of the General Statutes. G.S. 62-3, defining terms "as used in this chapter, unless the context otherwise requires," states in Clause (23) (d), "The term 'public utility,' except as otherwise expressly provided in this Chapter, *shall not include a municipality* * * *." (Emphasis added.) Thus, a municipality is not an "electric supplier" as that term is used in G.S. 62-110.2.

G.S. 62-110.2(c) (1) provides:

"In order to avoid unnecessary duplication of electric facilities, the [Utilities] Commission is authorized and directed to assign, as soon as practicable after January 1, 1966, to *electric suppliers* all areas, by adequately defined boundaries, that are outside the corporate limits of municipalities and that are more than 300 feet from the lines of all *electric suppliers* as such lines exist on the dates of the assignments * * *. The Commission shall make assignments of areas in accordance with public convenience and necessity, considering, among other things, the location of existing lines and facilities of *electric suppliers* and the adequacy and dependability of the service of *electric suppliers*, but not considering rate differentials among *electric suppliers*." (Emphasis added.)

G.S. 62-110.2(b) (8) provides:

"Every *electric supplier* shall have the *right* to serve *all premises* located wholly within the service area assigned to it pursuant to subsection (c) hereof." (Emphasis added.)

G.S. 62-110.2(b) (10) provides:

"No *electric supplier* shall furnish electric service to any premises in this State outside the limits of any incorporated city or town except as permitted by this section * * *. (Emphasis added.)

[1] The Act of 1965, including G.S. 62-110.2, did not, without more, alter the competitive rights of municipalities, investor-owned utilities and electric membership corporations to compete for patronage in areas outside the corporate limits of municipalities. *Utilities Commission v. Woodstock Electric Membership Corp.*, 276 N.C. 108, 117, 171 S.E. 2d 406. Any premises in any such area could, prior to an assignment of such area by

the Utilities Commission, have been served by any of the three competitors chosen by the user (assuming no contract restricting competition and assuming an extension to serve such user would fall within the "reasonable limitation," applicable to service by the municipality).

[2]  Here, we have more. The Utilities Commission has assigned the territory in question to Domestic. Thus, Domestic has the "right to serve *all* premises" (emphasis added) located wholly within the territory in question, including the Cokey Apartments. G.S. 62-110.2(b) (8). It is also true that no other "public utility" and no electric membership corporation may serve any premises, including the Cokey Apartments, lying wholly within this territory. G.S. 62-110.2(b) (10). However, the City of Rocky Mount is neither a "public utility" nor an electric membership corporation. Therefore, the city is not an "electric supplier," as that term is used in G.S. 62-110.2. Consequently, the city is not prohibited from serving Cokey Apartments by the provision of G.S. 62-110.2(b) (10).

[3]  While, by reason of G.S. 62-110.2(b) (8), Domestic has the *right* to serve *all* premises in the area, including Cokey Apartments, the mere grant of a right to serve is not the grant of an exclusive right to do so. If G.S. 62-110.2(b) (8) granted to the assignee of the territory an exclusive right to serve therein, G.S. 62-110.2(b) (10) would be surplusage. The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms. *State v. Harvey,* 281 N.C. 1, 19, 187 S.E. 2d 706; *In re Watson,* 273 N.C. 629, 634, 161 S.E. 2d 1. Furthermore, "the right of a potential user of electric power to choose between vendors of such power seeking his patronage is not lightly to be denied." *Blue Ridge Electric Membership Corp. v. Power Co.,* 258 N.C. 278, 128 S.E. 2d 405; *Utilities Commission v. Woodstock Electric Membership Corp., supra,* at p. 118.

An assignment of territory by the Utilities Commission can, of course, have no greater effect than that which is given to it by the statute, the Commission having no authority except that conferred upon it by the statute. *Utilities Commission v. Woodstock Electric Membership Corp., supra,* at p. 119.

Thus, we hold that the assignment to Domestic by the Utilities Commission of the area which includes the Cokey Apart-

ments did not automatically preclude the City of Rocky Mount from extending its service lines into the area.

Since G.S. 62-110.2(c)(1) directs the Utilities Commission to assign to electric suppliers all areas outside the corporate limits of municipalities and the Commission has now completed, or virtually completed, this task, a contrary construction of G.S. 62-110.2(b)(8) would make it unlawful for a city to construct a new line across the city limits to serve a residence or a business establishment, however close it may be to the city limits and however remote it may be from the existing line of the "electric supplier" to whom the area has been assigned. This would nullify G.S. 160A-312, which, as amended by Ch. 426 of the Session Laws of 1973, provides:

> "(A) city may acquire, construct, establish, enlarge, improve, maintain, own and operate any public enterprise *outside its corporate limits*, within reasonable limitations. * * *." (Emphasis added.)

The predecessor of this statute, G.S. 160-255, authorizing a municipality to render light, water, sewer and gas services outside its corporate limits, was in effect until replaced by G.S. 160A-312, as set forth in Ch. 698, Session Laws of 1971. Nothing in the legislative history of this statute indicates a legislative intent completely to deprive municipal corporations of the authority to serve new users outside the corporate limits.

[4] On the other hand, "It is equally clear that without legislative authority the [city] would not be permitted to extend its lines beyond the corporate limits for the purpose of selling electricity to nonresidents of the city." *Williamson v. High Point*, 213 N.C. 96, 195 S.E. 90. Its power to extend its lines and distribute electric current beyond its corporate boundaries is expressly restricted to "reasonable limitations."

[5, 6] The primary function of a municipal corporation is to provide local government within its limits and authorized services to its inhabitants, not to engage in business enterprises for profit outside its corporate limits. See, *Williamson v. High Point*, *supra.* "The term 'within reasonable limitations' does not refer solely to the territorial extent of the venture but embraces all facts and circumstances which affect the reasonableness of the venture." *Service Co. v. Shelby*, 252 N.C. 816, 115 S.E. 2d 12. An extension of a city's electric system, reasonable at the time

of and under the circumstances prevailing in *Grimesland v. Washington, supra,* would not necessarily be reasonable in the present day under the circumstances disclosed in the record before us.

[7]   In the present instance, the investor-owned utility, to which the territory has been assigned by the Utilities Commission "in accordance with public convenience and necessity," had its service lines in the immediate vicinity of the Cokey Apartments and was ready, able and willing to serve Cokey. There is nothing to indicate that its service will not be adequate. Both its service and its rates are subject to regulation by the Utilities Commission. Neither the service nor the rates of the city are subject to regulation by any agency other than the city itself. G.S. 62-3 (23) (d) ; G.S. 160A-312; *Dale v. Morganton,* 270 N.C. 567, 155 S.E. 2d 136. Under these conditions, we conclude and hold that the extension by the city of its electric system across its city limits to serve Cokey exceeds "reasonable limitations" and, therefore, is beyond the authority of the city.

While the Court of Appeals based its decision upon a construction of G.S. 62-110.2, which we deem erroneous, its decision to reverse the judgment of the Superior Court was correct for the reason herein stated and will not be disturbed.

Affirmed.