DUKE POWER COMPANY v. CITY OF MORGANTON, a MUNICIPAL CORPORATION

No. 8725SC1133

(Filed 19 July 1988)

Electricity § 2.3— right to supply electricity—temporary line in place on determination date

The trial court erred by holding that defendant had abandoned its right to supply electricity to a particular property under N.C.G.S. § 160A-332, the 1965 Electric Act, and that plaintiff had the exclusive right to provide electric service to the area where both parties had lines in place within 300 feet of the property when the property was annexed; the customer was therefore free to choose its supplier; the customer chose defendant; and defendant's line, which was a temporary line used in the construction of a hospital, was removed in 1975 or 1976. The determinative date was 1 June 1971, when the property was

taken into the city, and the rights created by the act are not subject to forfeiture because of later events occurring after the determination date.

APPEAL by defendant from *Gaines, Judge*. Judgment entered 13 July 1987 in Superior Court, BURKE County. Heard in the Court of Appeals 6 April 1988.

*Duke Power Company Deputy General Counsel W. Edward Poe, Jr. and Patton, Starnes, Thompson, Aycock & Teele, by Thomas M. Starnes, for plaintiff appellee.*

*Poyner & Spruill, by Ernie K. Murray, and Settlemyer & Hodges, by Steve B. Settlemyer, for defendant appellant.*

PHILLIPS, Judge.

This dispute is over the right to provide electric service to property in the City of Morganton on which the Bush-Denny automobile dealership is situated. The case is governed by the 1965 Electric Act (G.S. 62-110.2, G.S. 160A-331 to 160A-338), which was enacted at the behest of virtually all the State's suppliers of electric power. *Domestic Electric Service, Inc. v. City of Rocky Mount*, 285 N.C. 135, 203 S.E. 2d 838 (1974). The act has two purposes, to curtail litigation and prevent wasteful duplication of transmission and distribution systems, *Domestic Electric Service, Inc. v. City of Rocky Mount, supra*, 285 N.C. at 141, 203 S.E. 2d at 842, and the language used to accomplish them was carefully chosen. The rights of competing suppliers of electricity within the corporate limits of a city are governed by the provisions of Sections 331 and 332 of G.S. 160A; these statutes define primary and secondary suppliers and state the conditions under which each is entitled to serve property within our municipalities, and as so defined the City of Morganton, a municipal corporation, is the primary supplier of electrical services within its limits. G.S. 160A-332 also provides:

(a) The suppliers of electric service inside the corporate limits of any city in which a secondary supplier was furnishing electric service on the determination date (as defined in G.S. 160A-331(1)) shall have rights and be subject to restrictions as follows:

. . . .

(2) The secondary supplier shall have the right, subject to subdivision (3) of this section, to serve all premises initially requiring electric service after the determination date which are located wholly within 300 feet of its lines and located wholly more than 300 feet from the lines of the primary supplier, as such suppliers' lines existed on the determination date.

. . . .

(5) Any premises initially requiring electric service after the determination date which are located wholly or partially within 300 feet of the primary supplier's lines and are located wholly or partially within 300 feet of the secondary supplier's lines, as such suppliers' lines existed on the determination date, may be served by either the secondary supplier or the primary supplier, whichever the consumer chooses, and no other supplier shall thereafter furnish service to such premises, . . .

The facts of the case are not in dispute: When the property both parties now want to serve was annexed by the City of Morganton on 1 June 1971, the City had a line in place that was partially within 300 feet of it and Duke had two lines in place, one along the southern border of the property and one running to the northeast corner of the property, both of which were within 300 feet. The parties agree, as the trial judge found, that under these circumstances defendant is the primary supplier of electricity under G.S. 160A-331(4); plaintiff is the secondary supplier under G.S. 160A-331(5); under G.S. 160A-331(1) the determination date is 1 June 1971 when the property was taken into the city and since both parties then had lines in place within 300 feet of the property the customer was free to choose which party would supply it with electricity as G.S. 160A-332(a)(5) permits; and the customer chose defendant. The dispute turns upon the conclusions that were drawn from an additional fact—that the part of defendant's line that was within 300 feet of the property in 1971 (a temporary line, used during the construction of a nearby hospital) was removed in 1975 or 1976. From the fact of removal the trial judge found and concluded that the line had been abandoned and that the abandonment left the premises solely within the area served

by Duke's lines and that under G.S. 160A-332(a)(2) Duke has the exclusive right to provide electric service to the property. Thus, the decisive question before us is whether the common law doctrine of abandonment applies to the 1965 Electric Act. We hold that it does not.

An act that is clear and unambiguous must be given its plain and definite meaning, *Underwood v. Howland, Commissioner of Motor Vehicles*, 274 N.C. 473, 164 S.E. 2d 2 (1968), and in our opinion the 1965 Electric Act is such an act. It carefully defined and established the rights of competing power suppliers according to lines that were in place on a set date—matters that can usually be ascertained without either difficulty or dispute; and it gave no effect whatever to subsequent events of any kind, the likelihood and variety of which were certainly understood by the General Assembly. This means to us that the General Assembly intends for this clear statutory scheme to be effectuated when disputes arise between competing suppliers of electricity; that the rights created by the act are not subject to forfeiture because of later events occurring after the determination date; and that the court erred in holding that defendant had abandoned its rights under the act.

Reversed.

Chief Judge HEDRICK and Judge EAGLES concur.