CITY OF CONCORD, A MUNICIPAL CORPORATION v. DUKE POWER COMPANY, A
DOMESTIC CORPORATION

No. 196PA96

(Filed 6 June 1997)

**1. Energy § 7 (NCI4th)— annexation of lot—annexation of
secondary supplier's line—competing electric suppliers—
determination date**

In resolving the rights of competing electric suppliers to pro-
vide customer service within a municipality under the Electric
Act of 1965 where the competing interests have been created by
multiple annexations, the "determination date" is the annexation
date on which there first existed a primary and secondary sup-
plier competing for the right to service premises initially requir-
ing electric service. N.C.G.S. § 160A-332(a)(5).

**Am Jur 2d, Energy and Power Sources §§ 208, 209.**

**2. Energy § 7 (NCI4th)— annexation of lot—annexation of
secondary supplier's line—competing electric suppliers—
determination date—customer's right to choose supplier**

Where an area that included a customer's lot was annexed
into plaintiff city, an electric supplier, on 30 June 1986, an area
with a power company's electric conductor line was annexed into
the city on 30 June 1992, and the customer constructed on the lot
an industrial building requiring electric service after the 1992
annexation of the power company's line, the determination date
for applying the Electric Act of 1965 was 30 June 1992, the date
of annexation of the power company's line on which there first
existed a primary and secondary supplier competing for the right
to service premises initially requiring service. Since the cus-
tomer's premises were inside the city limits and located wholly or
partially within 300 feet of lines of both the primary and sec-

ondary suppliers on the determination date, the customer was free, pursuant to N.C.G.S. § 160A-332(a)(5), to choose which party would supply the premises with electricity.

**Am Jur 2d, Energy and Power Sources §§ 208, 209.**

Justice WHICHARD dissenting.

Justice WEBB joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 122 N.C. App. 248, 468 S.E.2d 615 (1996), reversing an order granting defendant the exclusive right to provide electric service to certain commercial premises entered by Stanback, J., on 3 January 1994 in Superior Court, Cabarrus County. Heard in the Supreme Court 12 November 1996.

*Poyner & Spruill, L.L.P., by S. Ellis Hankins and Nancy Bentson Essex, for plaintiff-appellee.*

*Duke Power Company, by Jeff D. Griffith, III; and Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., by W. Winburne King, III, and D. Beth Langley, for defendant-appellant.*

*Thomas K. Austin, Associate General Counsel; and Crisp, Page & Currin, L.L.P., by Robert F. Page, on behalf of North Carolina Electric Membership Corporation, amicus curiae.*

*Rose, Rand, Orcutt, Cauley, Blake & Ellis, by James P. Cauley, III, on behalf of ElectriCities of North Carolina, Inc., amicus curiae.*

*Hunton & Williams, by Richard E. Jones and Steven B. Epstein, on behalf of Carolina Power & Light Company, amicus curiae.*

LAKE, Justice.

This case is one of first impression with respect to proper application of the Electric Act of 1965. Specifically, the issue presented involves the legislative intent in statutory terminology designed to restrict and resolve the rights of competing electric suppliers to provide customer service within a municipality where the competing interests have been created by annexation.

Plaintiff City of Concord (City) is a municipal corporation located in Cabarrus County. Plaintiff owns and operates an electrical distribution system through which it provides electrical service to

## CITY OF CONCORD v. DUKE POWER CO.

[346 N.C. 211 (1997)]

customers located both inside and outside the City's corporate limits. Defendant Duke Power Company (Duke) is a public utility corporation in the business of providing electrical service to customers in an area which includes Cabarrus County.

This action arose out of a dispute between the City and Duke concerning which party has the right to provide electric service to a lot and industrial building owned by David Catchpole. The Catchpole lot was annexed into the City of Concord on 30 June 1986 (the 1986 annexation area) and is located wholly within 300 feet of a City electrical conductor (a line) for the distribution of electricity. The aforementioned conductor was in place prior to the effective date of the 1986 annexation and was annexed into the City along with the Catchpole lot.

The Catchpole lot is also located wholly or partially within 300 feet of a Duke conductor (line) for the distribution of electricity. This Duke conductor was in place but remained outside the City when the Catchpole lot was annexed in 1986. The Duke conductor is located in an area contiguous to the 1986 annexation area and was itself annexed into the City on 30 June 1992 (the 1992 annexation area). The Catchpole lot is not located wholly or partially within 300 feet of any other Duke conductor.

At some time after the 1992 annexation of the area containing the Duke conductor, David Catchpole began constructing an industrial building on his lot. At Catchpole's request, Duke provided temporary electric service to the premises during its construction. Catchpole ultimately requested that Duke provide permanent electric service to his lot and building. The City contends that it has an exclusive statutory right to provide electric service to the Catchpole lot.

Prior to trial, a temporary restraining order and preliminary injunction were entered in favor of the City restraining Duke from serving the Catchpole premises. After trial, Judge Stanback entered an order granting Duke the right to service the Catchpole premises and ordering the City to dismantle its service to the premises.

The City appealed to the Court of Appeals contending that the trial court erred in determining that section 160A-332(a)(5) of the North Carolina General Statutes gave Duke service rights to the Catchpole premises. The Court of Appeals reversed upon concluding the trial court erred in holding that the determination date, for purposes of applying N.C.G.S. §§ 160A-331 through 160A-338, was the

date the Duke Conductor was annexed in 1992. *City of Concord v. Duke Power Co.*, 122 N.C. App. 248, 253-54, 468 S.E.2d 615, 618 (1996). The Court of Appeals instead held that the determination date was 30 June 1986, the date the Catchpole lot was annexed, and that on that date, the City was the only supplier entitled to provide electric service to the lot. *Id.*

[1] In its sole issue on appeal, Duke contends that the Court of Appeals erroneously construed the Electric Act of 1965 with respect to competing electric service lines within a municipality. Specifically, Duke argues that the Court of Appeals erred by holding that the determination date was 30 June 1986, the date upon which the area containing the Catchpole lot was annexed, rather than 30 June 1992, the date upon which the area containing the Duke conductor was annexed. The issue at hand turns on whether the term "determination date," as that term is used in N.C.G.S. § 160A-332(a)(5), means the annexation date of the property or premises to be served or the annexation date of the secondary supplier's electric facilities. For the reasons set forth below, we hold that the defining event creating the "determination date" must be the annexation date of the secondary supplier's electric facilities.

The statutory service rights of electric suppliers within a municipality are set forth in N.C.G.S. §§ 160A-331 through 160A-338. Sections 160A-331 and 160A-332 are the only sections of the Electric Act pertinent to this appeal.

Section 160A-331 of the North Carolina General Statutes, entitled "Definitions," provides in part:

Unless the context otherwise requires, the following words and phrases shall have the meanings indicated when used in this Part:

(1) The "determination date" is

a. April 20, 1965, with respect to areas within the corporate limits of any city as of April 20, 1965;

b. The effective date of annexation with respect to areas annexed to any city after April 20, 1965;

c. The date a primary supplier comes into being with respect to any city first incorporated after April 20, 1965.

(2) "Line" means any conductor located inside the city for distributing or transmitting electricity . . . .

(3) "Premises" means the building, structure, or facility to which electricity is being or is to be furnished.

N.C.G.S. § 160A-331 (1994). Section 160A-332 of the North Carolina General Statutes, entitled "Electric service within city limits," provides in part:

(a) The suppliers of electric service inside the corporate limits of any city in which a secondary supplier was furnishing electric service on the determination date (as defined in G.S. 160A-331(1)) shall have rights and be subject to restrictions as follows:

. . . .

(5) Any premises initially requiring electric service after the determination date which are located wholly or partially within 300 feet of the primary supplier's lines and are located wholly or partially within 300 feet of the secondary supplier's lines, as such suppliers' lines existed on the determination date, may be served by either the secondary supplier or the primary supplier, whichever the consumer chooses, and no other supplier shall thereafter furnish service to such premises, except with the written consent of the supplier then serving the premises.

. . . .

(7) Except as provided in subdivisions (1), (2), (3), (5), and (6) of this section, a secondary supplier shall not furnish electric service within the corporate limits of any city unless it first obtains the written consent of the city and the primary supplier.

N.C.G.S. § 160A-332 (1994).

It is clear that subsection (b) of N.C.G.S. § 160A-331(1) is the only subsection applicable to the circumstances of this case. In its opinion, the Court of Appeals noted that the language of section 160A-331(1)(b) states that the determination date occurs on the date that the *area* was annexed. The Court of Appeals then cited *Duke*

*Power Co. v. City of Morganton*, 90 N.C. App. 755, 370 S.E.2d 54, *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988), for the proposition that the determination date is the date upon which the *property or premises* to be served was annexed. In essence, the Court of Appeals relied on *Morganton* as authority to substitute the word "premises" for "area." Based on this definition of "determination date," the Court of Appeals found that the determination date in the instant case was 30 June 1986, the date the Catchpole premises was annexed. This is a misapplication of the term "premises" as defined in the statute. As set forth above, a "premises" is defined as "the building, structure, or facility to which electricity is being or is to be furnished." N.C.G.S. § 160A-331(3). At the time of the 1986 annexation, the Catchpole property was a mere vacant lot. Thus, pursuant to the Act, there was no "premises" annexed or to be annexed on 30 June 1986.

Further, the Court of Appeals' reliance on *Morganton* misconstrues the holding of that case. A careful reading of *Morganton* reveals that it was never intended to establish as a matter of law that the determination date is the date upon which the premises to be serviced is annexed. At issue in *Morganton* was whether an electric line, which was in place at the time of annexation but subsequently removed, created corridor rights for the primary supplier. Unlike the present case, there was only one annexation of an area in *Morganton*. The opinion in that particular case stated that "[t]he parties agree, as the trial judge found, that . . . the determination date is 1 June 1971 when the property was taken into the city." *Morganton*, 90 N.C. App. at 757, 370 S.E.2d at 55. In the case *sub judice*, the Court of Appeals took what was in essence a stipulation to a determination date and applied it here as a rule of law, when in fact, the fixing of the determination date was never at issue in *Morganton*.

Moreover, by focusing on the "premises" as the object of the determination date, the Court of Appeals failed to consider the overall structure of the Act. It is clear from a full reading of the language of both N.C.G.S. §§ 160A-331 and 160A-332 that the focus is on *competing* electric lines and facilities *of two or more suppliers*, and not on premises or areas. The reason for focusing on the electric facilities rather than premises is straightforward. Under the overall scheme of these statutory sections, the only purpose served by the statutorily defined determination date is to fix the location of the primary and secondary suppliers' lines and facilities in order (1) to prevent the secondary supplier from extending its 300-foot corridor

rights with each new building serviced subsequent to the determination date, and (2) to similarly prevent the primary supplier from encroaching by artful annexation upon the secondary supplier's 300-foot corridor rights.

Significantly, N.C.G.S. § 160A-332(a) begins with a plural subject: "[t]he suppliers of electric service." Thus, the determination date becomes relevant only in situations where both a primary and secondary supplier existed. When the City chose to further annex the contiguous area in 1992, and thus bring into the City the Duke Power line, the "determination date" became relevant for the first time. Where only a primary or secondary supplier existed, there is no conceivable purpose for making reference to or considering N.C.G.S. §§ 160A-331 and 160A-332. As stated for the Court by Justice Lake, Sr., "[t]he presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms." *Domestic Elec. Serv., Inc. v. City of Rocky Mount*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974).

Finally, the Electric Act of 1965 was originally intended to prevent or reduce litigation regarding electric service rights between competing suppliers. *Id.* at 141, 203 S.E.2d at 842. Therefore, consistent with the intent of the Act, we hold that in situations in which multiple annexations have occurred, the determination date is the annexation date in which a primary and secondary supplier competing for the right to service a "premises initially requiring electric service first existed." *See* N.C.G.S. § 160A-332(a)(5). This interpretation best accomplishes the purpose of the Act.

[2] In the case *sub judice*, the Catchpole premises initially required service after the 1992 annexation. Therefore, the relevant determination date was 30 June 1992, the date of annexation in which there first existed a primary and secondary supplier competing for the right to service a premises initially requiring electric service. Since the Catchpole premises was inside the corporate city limits, located wholly or partially within 300 feet of the primary supplier's line and located wholly or partially within 300 feet of the secondary supplier's line on the relevant determination date, Catchpole was free, pursuant to N.C.G.S. § 160A-332(a)(5), to choose which party would supply the premises with electricity, and he chose Duke.

For the reasons stated herein, we reverse the decision of the Court of Appeals and remand this case to that court for further

remand to the Superior Court, Cabarrus County, for reinstatement of its judgment.

REVERSED AND REMANDED.

Justice WHICHARD dissenting.

The sole issue is whether the Court of Appeals erred in concluding that the determination date, as defined by the statute, was 30 June 1986. The majority holds that this was error and that the correct determination date was 30 June 1992. I believe the plain language of the statute establishes that the correct determination date was 30 June 1986, and I therefore dissent.

The statute defines "determination date" as "[t]he effective date of annexation with respect to areas annexed to any city after April 20, 1965." N.C.G.S. § 160A-331(1)(b) (1994). A statute must be applied as written. *In re Claim of Duckett*, 271 N.C. 430, 436, 156 S.E.2d 838, 844 (1967). When the language of a statute is clear and understandable on its face, we must not engage in judicial construction; rather, our task is to give the statute its plain meaning. *State ex rel. Util. Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977); *State ex rel. Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). The statutory language here is clear. The determination date is the effective date of the annexation of the area containing the Catchpole lot. That date was 30 June 1986.

The majority recognizes that the statute sets the determination date as the effective date of annexation for areas annexed to the city after 20 April 1965 and that the area containing the Catchpole lot was annexed on 30 June 1986. The majority nevertheless concludes that the determination date was not reached until the Duke Power conductor was annexed six years later.

The majority reasons, first, that the Court of Appeals improperly substituted the statutorily defined term "premises" for "area" and concluded that the determination date was therefore the date that the Catchpole premises were annexed. Because the Catchpole property was a vacant lot at the time of annexation, and thus not "premises" within the meaning of the statute, the majority concludes that there were no "premises" annexed on 30 June 1986.

The absence of premises on 30 June 1986 is irrelevant. As the majority emphasizes, the statute speaks to the *area* annexed, not the

**CITY OF CONCORD v. DUKE POWER CO.**

[346 N.C. 211 (1997)]

premises. The statute does not define "area." Words not defined by the statute are to be given their ordinary meaning. *See Lafayette Transp. Serv., Inc. v. County of Robeson,* 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973). In this context, "area," given its ordinary meaning, would encompass the entire geographic region annexed on 30 June 1986, including all the premises and vacant lots contained therein. It is undisputed that the Catchpole lot was annexed on that date; therefore, 30 June 1986 is the relevant determination date.

The majority then criticizes the Court of Appeals' reliance on *Duke Power Co. v. City of Morganton,* 90 N.C. App. 755, 370 S.E.2d 54, *disc. rev. denied,* 323 N.C. 364, 373 S.E.2d 544 (1988), because that case did not expressly address the meaning of "determination date." *Morganton*'s silence on the subject is irrelevant here, however, because the statute itself plainly establishes that the determination date is the date upon which a particular area is annexed.

Finally, the majority reasons that the Court of Appeals failed to consider the overall structure of the Electric Act of 1965. According to the majority, the Act focuses on competing electric lines and the facilities of two or more suppliers. The determination date thus becomes relevant only when there are at least two suppliers competing to serve a particular area. With this I agree. The majority then concludes, however, that the determination date should be defined as the annexation date on which a primary and secondary supplier competing to serve particular premises first existed. This is contrary to the plain language of the statute, which defines the determination date as the date the *area* was annexed, without regard to whether competing suppliers were available on that date. Obviously, such a determination would not need to be made if the owner of an annexed property sought service *before* a secondary supplier became available. When, as here, a lot does not require service until after a secondary supplier has become available, the determination then needs to be made as to which supplier has the right to serve the property. The statute directs us to resolve this question by reference to a statutorily defined determination date, which it makes clear.

The majority remands the case for reinstatement of the trial court's judgment. The trial court concluded that N.C.G.S. § 160A-332(a)(5) gave Catchpole the right to choose Duke Power as his supplier. Section 160A-332(a)(5) provides:

(5) Any premises initially requiring electric service after the determination date which are located wholly or partially

**CITY OF CONCORD v. DUKE POWER CO.**

[346 N.C. 211 (1997)]

within 300 feet of the primary supplier's lines and are located wholly or partially within 300 feet of the secondary supplier's lines, *as such supplier's lines existed on the determination date*, may be served by either the secondary supplier or the primary supplier, whichever the consumer chooses . . . .

(Emphasis added.) The Act defines a supplier's "line" as "any conductor located *inside the city* for distributing or transmitting electricity." N.C.G.S. § 160A-331(2) (emphasis added). At the time the Catchpole lot was annexed in 1986, Duke Power had a conductor located within 300 feet of the lot. That conductor was not *inside the city*, however; it therefore was not a "line" within the meaning of the statute. When the legislature defines a word in a statute, that definition is controlling, even if it is contrary to the ordinary and accepted meaning of the word. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 130-31, 177 S.E.2d 273, 280 (1970). Thus, N.C.G.S. § 160A-332(a)(5) is not applicable here because Duke Power did not have a "line" within 300 feet of the Catchpole lot on the determination date.

Duke Power and *amici* urge this Court to consider and act upon the policy implications of the statute as written. Specifically, they argue that the statute fails to provide adequate protection for consumer choice and fails to prevent the risk of anticompetitive annexation decisions by municipalities. Assuming *arguendo* that there is merit to these concerns, they are matters for the legislature, not for this Court. As we stated in *State ex rel. Utilities Comm. v. Electric Membership Corp.*:

It is for the Legislature, not for this Court or the Utilities Commission, to determine whether the policy of free competition between suppliers of electric power or the policy of territorial monopoly or an intermediate policy is in the public interest.

275 N.C. at 257, 166 S.E.2d at 668. Likewise, it is for the legislature, not for this Court, to determine whether a statute setting bright-line rules establishing suppliers' rights is preferable to a statute that preserves consumer choice in fact situations such as the one presented here.

As the majority recognizes, the purpose of the Act was to prevent or reduce litigation between competing suppliers. *Domestic Elec. Serv. Inc. v. City of Rocky Mount*, 285 N.C. 135, 141, 203 S.E.2d 838, 842 (1974). The General Assembly chose to accomplish this purpose by creating the concept of "determination date" and by clearly defining determination date as the date the area was annexed. It is not for

this Court to redefine this statutory term. When the terms of a statute are clear, it is this Court's duty to apply the statute, "irrespective of any opinion we may have as to its wisdom." *Peele v. Finch*, 284 N.C. 375, 382, 200 S.E.2d 635, 640 (1973).

For these reasons, I respectfully dissent. I would affirm the decision of the Court of Appeals.

Justice WEBB joins in this dissenting opinion.