CITY OF NEW BERN, A MUNICIPAL CORPORATION, PLAINTIFF v. CARTERET-CRAVEN ELECTRIC MEMBERSHIP CORPORATION, DEFENDANT

No. COA00-632

(Filed 17 July 2001)

**Utilities— competing electric companies—two buildings— premises—separate metering**

The trial court did not err by granting partial summary judgment in favor of plaintiff city ordering defendant electric company to cease supplying electric service to the new building of the Havelock Animal Hospital when plaintiff originally supplied the

**CITY OF NEW BERN v. CARTERET-CRAVEN ELEC. MEMBERSHIP CORP.**

[145 N.C. App. 140 (2001)]

electric service to the old building, and by granting plaintiff a permanent injunction barring defendant from providing electric service to the hospital, because: (1) the hospital's two buildings located on contiguous tracts of land used by one electric consumer for commercial purposes means there is one premises as defined under N.C.G.S. § 160A-331(3); (2) neither the construction of a second building, nor the subsequent demolition of the original building, serve to change this fact; and (3) the separate metering exception under the statute does not alter this conclusion based on the facts of this case since the only reason the buildings were separately metered is that the hospital requested that defendant provide electric service to its new building.

Appeal by defendant from judgment entered 29 February 2000 by Judge James E. Ragan, III, in Craven County Superior Court. Heard in the Court of Appeals 29 March 2001.

*Poyner & Spruill, L.L.P., by John R. Jolly, Jr., and Nancy Bentson Essex, for plaintiff-appellee.*

*Taylor & Taylor, by Nelson W. Taylor, III, for defendant-appellant.*

BIGGS, Judge.

This appeal arises from a dispute between competing electric companies over the right to provide electric service to the Havelock Animal Hospital, in Havelock, North Carolina. The pertinent facts are as follows: The plaintiff, City of New Bern (New Bern), is a municipal corporation in Craven County. It owns and operates a municipal electric distribution system, serving customers both in New Bern, and beyond its corporate limits. Havelock, a municipal corporation about sixteen miles from New Bern, does not have a municipal electric system. New Bern has served customers in Havelock since the 1950's. Defendant, Carteret-Craven Electric Membership Corporation (Carteret), is an electric membership cooperative that also serves customers in Havelock.

In 1956, New Bern began providing electric service to a veterinary clinic located at 415 Miller Boulevard, Havelock. In the late 1970's, the veterinary practice was incorporated as Havelock Animal Hospital (the hospital). It also created a partnership, Havelock Animal Clinic, for the purpose of owning the land on which their business was situated. In 1986 the clinic purchased 413 Miller Boulevard, the lot that

CITY OF NEW BERN v. CARTERET-CRAVEN ELEC. MEMBERSHIP CORP.

[145 N.C. App. 140 (2001)]

adjoined 415 Miller Boulevard. Almost ten years later, in 1995, the veterinary practice began construction of a new building for the Havelock Animal Hospital.

The new animal hospital building was located almost entirely on the newer part of their property, acquired in 1986 and previously numbered 413 Miller. Despite the construction of the second building, the hospital's address has remained 415 Miller. During the construction of its new facility, the animal hospital continued to operate out of its original building, to which New Bern continued to provide electric service. However, after construction began, the hospital asked Carteret to provide electric service for their new building. Carteret began supplying electric power to the new building in March, 1996, after the hospital had moved in X-ray equipment. Construction of the new building was completed six months later, in September, 1996. At that time, all of the animal hospital's services were moved to the new building, and in late September, 1996, the hospital asked New Bern to discontinue electric service to the original building. In February, 1997, the hospital demolished their older building.

In January, 1999, New Bern brought this action against Carteret, alleging that the defendant has violated New Bern's statutory right to continue providing electric service to Havelock Animal Hospital. The complaint requested a permanent injunction to prevent Carteret from supplying electricity to the hospital, and also asked for damages in the amount that plaintiff had lost since the hospital changed providers of electric power. Carteret's answer asserted a statutory right to supply electric service to the new animal hospital building. On 16 December 1999 the plaintiff moved for summary judgment, and the motion was heard on 29 February 2000. Following the hearing, the trial court granted partial summary judgment for New Bern. It ordered Carteret to cease supplying electric service to 415 Miller Boulevard, and ruled that New Bern was entitled to a permanent injunction barring Carteret from providing electric service to the hospital, and to an unspecified amount in damages. The court certified the case for immediate appeal, and postponed consideration of the amount of damages pending this Court's ruling. Carteret gave notice of appeal on 16 March 2000. On 8 May 2000 the trial judge ordered a stay in the execution of judgment.

Carteret's appeal does not assert that unanswered questions of material fact make summary judgment improper. Rather, defendant challenges the trial court's legal conclusion that plaintiff has the

exclusive right to provide electric service to Havelock Animal Hospital in this situation. For the reasons that follow, we find that on the facts of this case, the original supplier of electric service, New Bern, has retained an exclusive right to continue providing service to the animal hospital.

The resolution of this dispute requires an examination of several statutes. Carteret was established pursuant to N.C.G.S. Chapter 117, "Electrification," and is authorized under N.C.G.S. § 117-18 (1999) to contract for the sale of electric service. New Bern is a municipal electric company, authorized by N.C.G.S. § 160A-312 (1999) to operate an electric distribution system within the city limits, and to serve customers "outside its corporate limits, within reasonable limitations[.]" Havelock Animal Hospital is located in the municipality of Havelock, and not within any area assigned to a specific franchise. Therefore, both Carteret and New Bern are generally authorized to serve customers in Havelock, subject to particular exceptions.

N.C.G.S. Chapter 62, Part 2 "Electric Service in Urban Areas," §§ 160A-331 and 160A-332 (1999), govern the provision of electric service within a municipality, such as Havelock. N.C.G.S. § 160A-332(a)states that:

> The suppliers of electric service inside the corporate limits of any city in which a secondary supplier was furnishing electric service on the determination date . . . shall have rights and be subject to restrictions as follows: (1) The secondary supplier shall have the right to serve all premises being served by it, or to which any of its facilities are attached, on the determination date.
>
> . . . .
>
> (3) Any premises initially requiring electric service after the determination date which are located wholly within 300 feet of a secondary supplier's lines and wholly within 300 feet of another secondary supplier's lines, . . . may be served by the secondary supplier which the consumer chooses[.]

In the instant case, the parties agree that they both are "secondary suppliers," as defined by G.S. § 160A-331(5). They further agree that the applicable "determination date" is April 20, 1965, as set out in G.S. § 160A-331(1b). Finally, both Carteret and New Bern agree that the animal hospital lies "wholly within 300 feet" of the lines of both companies. However, the parties disagree as to whether the new building

is a "premises [already] being served by [New Bern], or is a "premises initially requiring electric service."

"Premises" is statutorily defined as follows:

'Premises' means the building, structure, or facility to which electricity is being or is to be furnished. Two or more buildings, structures, or facilities that are located on one tract or contiguous tracts of land and are used by one electric consumer for commercial, industrial, institutional, or governmental purposes, shall together constitute one 'premises,' except that any such building, structure, or facility shall not, together with any other building, structure, or facility, constitute one 'premises' if the electric service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility.

N.C.G.S. § 160A-331(3) (1999). (N.C.G.S. § 62-110.2, "Electric Service Areas Outside of Municipalities," § 62-110.2(a)(1), uses the same definition of 'premises' for rural areas, so appellate cases interpreting the definition of 'premises' are equally applicable regardless of whether they deal with an area in a municipality.) In the instant case, we find that the hospital buildings comprised "two or more buildings . . . located on contiguous tracts of land and . . . used by one electric consumer for commercial . . . purposes," and thus are one premises. The defendant has argued that each building is a separate premises, because they were "separately metered." However, both buildings were part of the animal hospital, with the same owners and employees, and even the same address. The only reason they were separately metered is that the hospital requested that Carteret provide electric service to its new building. In this situation, the 'separate metering' is simply an artifact of the very dispute that we are attempting to resolve. Our conclusion in this regard would be different if the animal hospital, following construction of a second building, had leased one of its buildings to, *e.g.*, a pet supply store, kennel, or other tenant. In that event, the separate metering would reflect the underlying reality that there were two separate enterprises, each responsible for its own electric charges.

The parties have presented arguments on whether or not the second animal hospital building was a "replacement" premises. In any ordinary sense of the word, the new building clearly was a 'replacement' for the older one. However, we do not find this to be dispositive of the issue. Of greater significance is the fact that both buildings

were part of the Havelock Animal Hospital, and thus were used by "one electric consumer for commercial . . . purposes." In this view we find support from prior appellate decisions. In *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 166 S.E.2d 663 (1969), the facts were these: Acme, a manufacturing concern, bought a 36 acre tract in Robeson County. At the time of purchase, Lumbee River Electric Membership Corporation had lines on the property, because it had provided electric service to a tenant house and two signs located on the tract. When Acme constructed its manufacturing facilities, it contracted with CP&L to provide electric service. Lumbee brought suit against CP&L, alleging that it had the right to extend the line that had served the old tenant house, in order to provide electric service to Acme's plant. The trial court dismissed the complaint, and this Court affirmed. On appeal, the North Carolina Supreme Court addressed the issue of whether Acme's facility was a "premises being served by [Lumbee]," by virtue of the lines already on the tract of land, or was instead a "premises initially requiring electric service." The Court noted that "premises" are defined as "the building, structure, or facility" requiring electric service, and concluded that:

> it is the plant of Acme, and not the tract upon which it is located, which constitutes the 'premises' here involved[.] . . . Thus [the statute] does not confer upon Lumbee the right to serve the Acme plant by reason of Lumbee's former service to the residence and the electric signs previously located on this tract.

*Utilities Comm.*, 275 N.C. at 259, 166 S.E.2d at 669-70. *See also City of Concord v. Duke Power Co.*, 346 N.C. 211, 485 S.E.2d 278 (1997) (vacant lot that is annexed does not constitute a 'premises' in meaning of statute); *Crescent Electric Membership Corp. v. Duke Power*, 126 N.C. App. 344, 485 S.E.2d 312 (1997) (the various buildings and structures comprising a water treatment plant all are one 'premises' under statutory definition).

"When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative body or a court under the guise of construction." *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977); *Peele v. Finch*, 284 N.C. 375, 200 S.E.2d 635 (1973). We find that G.S. § 160A-331(3) 'clearly and unambiguously' defines premises, and further find that both buildings that Havelock Animal Hospital constructed on its contiguous tracts of land constituted one premises. Thus, the hospital was "a premises being served by" New Bern.

Neither the construction of a second building, nor the subsequent demolition of the original building, serve to change this fact. Nor, on the facts of this case and for the reasons stated herein, does the "separate metering exception" outlined in the statute alter our conclusion. Therefore, New Bern retained the exclusive right to provide electric service to the hospital, and the trial court's grant of summary judgment was proper.

Accordingly, we affirm the trial court.

Affirmed.

Judges MARTIN and JOHN concur.